2015 IL App (2d) 140540
No. 2-14-0540
Opinion filed March 20, 2015
Modified on denial of rehearing April 16, 2015

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Stephenson County. |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 91-CM-373 |
| DARCEY R. FREDERICK, | ) ) ) | |
| Defendant-Appellee | ) ) | |
| (The Department of State Police, Intervenor-Appellant). | ) ) ) ) | Honorable John F. Joyce, Judge, Presiding. |

_____

PRESIDING JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Zenoff and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1    After the Illinois Department of State Police told Darcey Frederick that it was revoking his firearm owner's identification (FOID) card because of an earlier conviction of misdemeanor battery against his former girlfriend, he filed a petition challenging the revocation in the circuit court of Stephenson County.    The circuit court ordered the Department to issue Frederick a FOID card.    The Department appeals, arguing that (1) the circuit court did not have jurisdiction to hear the petition because Frederick had not properly exhausted his administrative remedies, and (2) in any event, neither the circuit court nor the Director of the Department could issue a

FOID card to Frederick under the current version of the Firearm Owners Identification Card Act (FOID Act) (430 ILCS 65/1 *et seq.* (West 2012) (as amended by Pub. Act 97-1131, § 15 (eff. Jan. 1, 2013))), because doing so would be contrary to federal law. We reject the Department's first argument but agree with its second. We therefore reverse the judgment of the circuit court.

¶ 2                                    I. BACKGROUND

¶ 3     In April 1991, Frederick was charged with two Class A misdemeanors: domestic battery (Ill. Rev. Stat. 1991, ch. 38, ¶ 12-3.2) and criminal trespass to a residence (Ill. Rev. Stat. 1991, ch. 38, ¶ 19-4). Frederick does not dispute that the victim of the battery was a woman with whom he had cohabited. In August 1991, Frederick entered into a plea bargain, under which the charge of domestic battery was amended to battery (Ill. Rev. Stat. 1991, ch. 38, ¶ 12-3). Frederick pled guilty to that charge, and the charge of criminal trespass to a residence was dismissed. Frederick was sentenced to conditional discharge.

¶ 4     In 2011, Frederick applied to the Department for a FOID card. At that time, the following statutes relating to the issuance of a FOID card were in effect. Section 8(n) of the FOID Act provided that the Department had authority to deny an application for a FOID card, or revoke a previously issued FOID card, if the person was "prohibited from acquiring or possessing firearms or firearm ammunition by any *** federal law." 430 ILCS 65/8(n) (West 2010). Section 922(g)(9) of the federal Gun Control Act imposed such a prohibition on anyone "convicted *** of a misdemeanor crime of domestic violence." 18 U.S.C. § 922(g)(9) (2006). However, the FOID Act also provided that, upon appeal of a denial or revocation of a FOID card, the Department's Director or the circuit court (whichever was hearing the appeal) could grant the relief requested if the petitioner established that: (1) he or she had not been convicted of or served time for a forcible felony within the last 20 years; (2) considering the petitioner's criminal history and reputation, he or she was "not *** likely to act in a manner dangerous to

public safety" in the future; and (3) granting the relief "would not be contrary to the public interest." 430 ILCS 65/10(c)(1)-(3) (West 2010). If the petitioner met these requirements, courts construed the FOID Act as allowing the Director or the circuit court to override or ignore the federal prohibition against possession of a gun or ammunition. See *Coram v. State of Illinois*, 2013 IL 113867, ¶ 59 ("Subsections (2) and (3) of section [10](c) of the 2010 version of the FOID Card Act allow a court to grant relief from the denial of a FOID card," when the denial is based on section 8(n).); *Hiland v. Trent*, 373 Ill. App. 3d 582, 585 (2007) (even where section 8(n) of the FOID Act applies, Director has authority in extraordinary cases to issue FOID cards to "persons who have established their fitness to possess a gun" (internal quotation marks omitted)). The Department granted Frederick's application and issued him a FOID card.

¶ 5    In 2012, the General Assembly amended section 10 of the FOID Act in two ways relevant here. Pub. Act 97-1131, § 15 (eff. Jan. 1, 2013). First, subsection (b), which allowed a circuit court to order the Department to issue a FOID card if it found that "substantial justice ha[d] not been done" in the denial or revocation of such a card, was amended to add the following restriction: "However, the court shall not issue the order if the petitioner is otherwise prohibited from obtaining, possessing, or using a firearm under federal law." *Id*. Second, the General Assembly added subsection (c)(4), which limited the authority of the Director and the circuit court by imposing an additional requirement: before relief could be granted, the Director or the court must find that "granting relief would not be contrary to federal law." *Id*. These amendments to the Act became effective on January 1, 2013.

¶ 6    Thereafter, Frederick sought to buy a gun and the seller contacted the Department to see if Frederick was eligible to own the weapon. On March 13, 2013, the Department notified Frederick that it was revoking his FOID card based on his 1991 conviction. The Department's letter stated that it was "prohibited from issuing a [FOID] card to anyone convicted of any crime

involving domestic violence." It also noted that the revocation was "in accordance with the Federal Gun Control Act of 1968, 18 USC [§] 922(g)(9)."

¶ 7    In May 2013, Frederick filed a petition seeking the issuance of a FOID card, in the circuit court of Stephenson County. The Department filed a "non-party response"[1] to the petition, arguing that the circuit court lacked subject matter jurisdiction to hear the petition because section 10(a) of the FOID Act (430 ILCS 65/10(a) (West 2012)) provided that the sole avenue of appeal for Frederick was an administrative appeal to the Director. It also argued that the petition should be denied because Frederick was barred by the federal Gun Control Act from possessing guns and ammunition. Frederick responded that his petition was properly directed to the circuit court and that Illinois law permitted him to have a FOID card because his conviction was not for domestic battery as that term is defined under federal law.

---

[1] At the hearing on his petition, Frederick acknowledged that he had voluntarily provided notice of his petition to the Department, knowing that it usually sought involvement in such proceedings. Although the Department had not formally moved to intervene in the case, the circuit court indicated that it viewed the Department as an intervenor. A few months later, during the hearing on the Department's motion to reconsider, Frederick confirmed that he did not object to the Department's participation in the proceedings. The circuit court then orally granted the Department leave to intervene, stating that the Department had "an interest in this" and was "a legitimate party to this." Frederick has not filed any cross-appeal from this order. Thus, there is no issue of our jurisdiction to hear this appeal. See *Hanson v. De Kalb County State's Attorney's Office*, 391 Ill. App. 3d 902, 906 (2009) (where Department was acknowledged to have been a proper party in the circuit court, it may appeal an adverse judgment).

¶ 8    The hearing on the petition was held on December 12, 2013.   At the close of the oral arguments, the circuit court ruled that it would grant the petition.   In explaining its ruling, the circuit court began by stating that it would not apply the 2013 amendments to the FOID Act, because the Department initially granted Frederick a FOID card in 2011.   A written order embodying the ruling was entered on January 8, 2014, in which the circuit court found that Frederick had not been convicted of a forcible felony within the last 20 years, he was not likely to act in a manner dangerous to public safety, and granting him relief would not be contrary to the public interest.   The court ordered the Department to issue Frederick a FOID card.

¶ 9    The Department moved for reconsideration, reiterating its jurisdictional argument and raising a new argument—that Frederick had made a false statement on his 2011 application by answering "no" to the question of whether he had ever been convicted of domestic battery or a substantially similar offense.   In his response, Frederick argued that he had not made a false statement, because the battery victim was no longer in a domestic relationship with him at the time of the offense.   Frederick also argued that the Department could not rely on the police report of the incident, because it was inadmissible hearsay.   On May 1, 2014, the circuit court entered an order finding that it had jurisdiction and denying the motion for reconsideration. This appeal followed.

¶ 10                                    II. ANALYSIS

¶ 11    On appeal, the Department renews its arguments that the circuit court lacked jurisdiction to hear the petition and that, under the 2013 amendments to the FOID Act, Frederick cannot be issued a FOID card.   We begin by considering the jurisdictional argument.

¶ 12                                    A. Jurisdiction

¶ 13    In contrast to courts' broad subject matter jurisdiction with regard to most disputes, "[t]he circuit and appellate courts have jurisdiction to review administrative agency actions only as

provided by statute." *State of Illinois ex rel. Pusateri v. Peoples Gas Light & Coke Co.*, 2014 IL 116844, ¶ 13 (citing Ill. Const. 1970, art. VI, §§ 6, 9). The Department's revocation of Frederick's FOID card was an administrative act, reviewable by the circuit court only in the manner specified in the FOID Act. We therefore examine the FOID Act to see whether it permitted review directly in the circuit court.

¶ 14    As relevant here, section 10(a) of the FOID Act provides:

> "Whenever *** a [FOID] Card is revoked *** as provided for in Section 8 of this Act, the aggrieved party may appeal to the Director of State Police *** unless the *** revocation *** was based upon a *** domestic battery, *** in which case the aggrieved party may petition the circuit court in writing in the county of his or her residence for a hearing upon such denial, revocation or seizure." 430 ILCS 65/10(a) (West 2012) (as amended by Pub. Act 97-1131, § 15 (eff. Jan. 1, 2013)).

The Department argues that, under this provision, Frederick was required to appeal to the Director rather than proceeding directly in the circuit court, because his conviction was for battery, not domestic battery.

¶ 15    In construing a statute, our task is to "ascertain and give effect to the legislature's intent." *Lieb v. Judges' Retirement System*, 314 Ill. App. 3d 87, 92 (2000). The best indicator of the legislature's intent is the plain language of the statute. *Lee v. John Deere Insurance Co.*, 208 Ill. 2d 38, 43 (2003). "When the statute's language is clear, it will be given effect without resort to other aids of statutory construction." *Id.*

¶ 16    Here, the plain language of the statute permits appeals directly to the circuit court where the FOID card denial or revocation was "based upon a *** domestic battery." The issue before us is whether that language encompasses denials or revocations based upon the *commission* of a domestic battery, or only those denials or revocations based upon a *conviction* of domestic

battery. Because the statutory language makes no mention of conviction, we conclude that a conviction of one of the offenses enumerated in section 10(a) is not required in order to satisfy the statute. Rather, as the plain language of section 10(a) states, an appeal directly to the circuit court is permitted whenever the denial or revocation was "based upon" an enumerated offense such as domestic battery.

¶ 17 In *Miller v. Department of State Police*, 2014 IL App (5th) 130144, the Department raised a similar jurisdictional argument: that Miller (the petitioner) could not appeal directly to the circuit court, because the Department's revocation of his FOID card was based not upon a conviction of domestic battery but upon a *charge* for that offense. (Miller in fact had been convicted of domestic battery, but the Department was unaware of the conviction at the time it issued the revocation.) The reviewing court rejected this argument as overly narrow and contrary to the plain language of the statute:

> "The plain language of section 10(a) of the Act provides that an aggrieved party may appeal to the circuit court if the revocation of his FOID card was 'based upon' one of the enumerated offenses. Nowhere in the statute did the legislature impose the limitation that the aggrieved party must be *convicted of* one of the enumerated offenses ***." (Emphasis added.) *Id*. ¶ 22.

Noting that courts should not insert requirements or impose limitations that are inconsistent with the plain language of a statute, the court held that Miller's petition to the circuit court was proper, as the revocation had indeed been "based upon" a domestic battery. *Id*.

¶ 18 We reject, as contrary to the plain language of the statute, the Department's attempt to distinguish *Miller*. The Department narrowly focuses on battery as the underlying Illinois offense for Frederick's revocation. Since battery is not an offense enumerated in section 10(a), the Department argues that the circuit court lacked jurisdiction. The Department's letter to

Frederick emphasized the domestic nature of his offense, stating that he had been "convicted of Battery, as a result of an incident involving domestic violence." It further stated that Frederick's conviction of a "crime involving domestic violence" rendered him ineligible to hold a FOID card, and so the Department was revoking his FOID card. Thus, the stated basis for the Department's revocation of Frederick's FOID card was that Frederick had, in fact, committed a domestic battery. The legislature's choice of the words "based upon" (as opposed to "convicted of" or some other more limiting language) allows for a broader reading of when an enumerated offense such as domestic battery is implicated. Under these circumstances, the revocation was indeed "based upon" a domestic battery, despite the fact that Frederick's conviction was for battery.

¶ 19     Accordingly, Frederick could appeal the revocation of his FOID card directly to the circuit court, and the circuit court did not lack jurisdiction to hear his petition. We therefore turn to the issue of whether the circuit court erred in granting that petition.

¶ 20                                   B. Applicable Law

¶ 21     The circuit court's factual findings in support of its judgment requiring the Department to issue Frederick a FOID card are not at issue in this appeal. Rather, the Department raises purely legal issues, asserting that, under the 2013 version of the FOID Act, Frederick's 1991 conviction prevented him from being issued a FOID card. We review issues of law, including issues of statutory interpretation, *de novo*. *People v. Marshall*, 242 Ill. 2d 285, 292 (2011).

¶ 22     Before turning to the merits, we must address a threshold issue: which version of the FOID Act applies to Frederick's petition, the statute as it existed in 2011 when the Department first issued a FOID card to him, or the version of the statute in effect when the Department revoked that card in 2013? Remarkably, neither party addressed this issue in its brief before this court—each side simply applied the version of the statute that favored its position. We

therefore asked the parties to address the issue at oral argument. Based upon their arguments and our own research, we conclude that the 2013 version of the statute—the version in effect when the Department revoked Frederick's FOID card—must be applied.

¶ 23    Ordinarily, the law to be applied is the law that is in effect at the time of the administrative action at issue. See *Goral v. Illinois State Board of Education*, 2013 IL App (1st) 130752, ¶ 27 (the date of the administrative body's decision or action is the relevant date in determining which version of a statute applies). Here, the action challenged by Frederick was the Department's revocation of his FOID card in 2013, not its 2011 issuance of that card. Thus, a court reviewing that revocation must apply the version of the statute in effect when the revocation occurred, and the circuit court erred in applying the 2011 version of the statute.[2]

---

[2] In its petition for rehearing, the Department argued that our formulation in this paragraph is too narrow, and that the 2013 amendments may be applied to any case pending after their effective date, even if the Department's action was taken before that date. In support, it cited *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994), and *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 38 (2001) (adopting the *Landgraf* approach). However, the Department never raised this argument before the trial court and likewise failed to raise it on appeal in either its briefs or its oral argument despite ample opportunity to do so. Accordingly, it is not a proper basis for rehearing. Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) ("Points not argued are waived and shall not be raised *** on petition for rehearing."). Further, as the Department concedes, an exploration of *Landgraf*'s application is not necessary to our resolution of the issues in this case. We therefore decline the Department's belated invitation to address this issue. Rather, we simply clarify that nothing in this opinion should be read as rejecting a broader application of the 2013 amendments.

¶ 24    To the extent that the circuit court may have feared that applying the 2013 version of the FOID Act would retroactively deprive Frederick of rights he possessed when he was first issued the card in 2011, those concerns were unfounded.   In 2011 Frederick was barred from possessing a gun or ammunition by section 922(g)(9) of the federal Gun Control Act, just as he is now.   Section 8(n) of the FOID Act, which permitted the Department to deny a FOID card (or revoke a card that had been issued) to anyone who was barred by federal law from possessing a gun or ammunition, was likewise in effect in 2011.   However, on January 1, 2013, amendments to the FOID Act took effect, which prevented the Director or the courts from overlooking Frederick's disqualification under federal law.   Thus, when he sought to purchase a gun, the Department revoked his FOID card.

¶ 25    As our supreme court has explained, this type of administrative action does not involve the retroactive application of a new penalty.   Rather, it simply operates prospectively to deny a benefit in the future.   In *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, physicians brought suit after their professional licenses had been permanently revoked under a new law that barred them from holding such licenses based upon previous convictions of battery and criminal sexual abuse of their patients.   The physicians argued that applying the new law to them would have impermissible retroactive effects, violating due process.   *Id*. ¶ 22.   The supreme court rejected this argument, explaining that, although the new law relied on earlier convictions, it did not apply retroactively to those convictions, as it did not "change the criminal penalties imposed on plaintiffs' convictions, nor *** render unlawful conduct that was lawful at the time it was committed."   *Id*. ¶ 26.   "An amended statute which creates new requirements to be imposed in the present or future, and not in the past, does not have a retroactive impact on the parties."   *Id*.   Because the new law affected only the present and future eligibility of the plaintiffs to hold their professional licenses, it did not have an

impermissible retroactive effect or violate due process. *Id.* Moreover, the plaintiffs' professional licenses were not vested rights, as they were subject to ongoing regulatory oversight in order to promote public safety. *Id.* ¶ 31; see also *Mohammad v. Department of Financial & Professional Regulation*, 2013 IL App (1st) 122151, ¶ 14 (administrative agency did not improperly apply a new statute retroactively when it denied an application for renewal of a mortgage broker license that had been renewed several times before but now had to be denied because of the new statute).

¶ 26    Like the new laws applied in *Hayashi* and *Mohammad*, the 2013 amendments to the FOID Act do not penalize Frederick's past conduct; they simply affect his present and future eligibility to hold a FOID card. Accordingly, there is no obstacle to applying the 2013 version of the FOID Act here.

¶ 27        C. Did the Trial Court Err in Ordering the Issuance of a FOID Card?

¶ 28    The Department revoked Frederick's FOID card under section 8(n) of the FOID Act, which authorizes the Department to revoke a FOID card previously issued to a person who is "prohibited from acquiring or possessing firearms or *** ammunition" by state or federal law. 430 ILCS 65/8(n) (West 2012). Section 922(g)(9) of the Gun Control Act imposes such a disqualification on anyone convicted of a "misdemeanor crime of domestic violence." 18 U.S.C. § 922(g)(9) (2006) (criminalizing, among other things, the receipt, possession, or transportation of a gun or ammunition by any person convicted of a misdemeanor crime of domestic violence). Further, as amended in 2013, the FOID Act forbids courts from ordering the issuance of a FOID card if the person seeking the card is prohibited from obtaining or possessing a gun under federal law. 430 ILCS 65/10(b) (West 2012) (as amended by Pub. Act 97-1131, § 15 (eff. Jan. 1, 2013)). Thus, if Frederick's battery conviction qualifies as a

"misdemeanor crime of domestic violence," the circuit court erred as a matter of law in ordering the issuance of a FOID card to him.

¶ 29    The term "misdemeanor crime of domestic violence" is defined in section 921(a)(33)(A) of the Gun Control Act to include any offense that is a misdemeanor under federal, state, or tribal law, and that "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by *** a person who is cohabiting with or has cohabited with the victim as a spouse *** or by a person similarly situated to a spouse."   18 U.S.C. § 921(a)(33)(A) (2006).   In *United States v. Hayes*, 555 U.S. 415, 426 (2009), the Supreme Court held that a state law conviction is properly classified as a "misdemeanor crime of domestic violence" so long as the first part of this definition (the use or attempted use of physical force, or the threatened use of a deadly weapon) was a required element of the offense of conviction. The second portion of the definition (that the offense was committed within a domestic relationship as defined in section 921(a)(33)(A)) need not have been a required element of the offense of conviction.   *Id*.   Thus, a conviction of battery may qualify as a "crime of domestic violence."   *Id*.

¶ 30    Although the Court arrived at this conclusion by applying principles of statutory construction, it stated that practical considerations also supported its conclusion.   "Firearms and domestic strife are a potentially deadly combination nationwide," the Court noted, and Congress's "manifest purpose" in enacting section 922(g)(9) in 1996 was to address this issue effectively.   *Id*. at 427.   At the time of enactment, however, "only about one-third of the States had criminal statutes that specifically proscribed *domestic* violence," and "[e]ven in those States, domestic abusers were (and are) routinely prosecuted under generally applicable assault or battery laws."   (Emphasis in original.)   *Id*.   Thus, if section 922(g)(9) encompassed only those convictions labeled as "domestic" battery, it "would have been 'a dead letter' in some

two-thirds of the States from the very moment of its enactment." *Id*. (quoting *United States v. Hayes*, 482 F.3d 749, 762 (4th Cir. 2007) (Williams, J., dissenting)). The Court held that Congress did not intend such a limited result. Rather, Congress intended section 922(g)(9)'s application to extend to those persons convicted "under a generic use-of-force statute (one that does not designate a domestic relationship as an element of the offense)." *Id*. at 426-27. A conviction for battery (as opposed to domestic battery) therefore triggers the prohibition of section 922(g)(9), so long as the State can show that the required domestic relationship was in fact present.

¶ 31    On appeal, Frederick does not dispute that he was convicted of a "misdemeanor crime of domestic violence" as that term is defined in the Gun Control Act, or that, under federal law, he may not possess a gun or ammunition. Rather, he argues that section 922(g)(9) does not prevent him from having a FOID card, relying upon Illinois case law holding that a circuit court may override the federal prohibition and issue a FOID card nevertheless. See, *e.g.*, *Coram*, 2013 IL 113867, ¶ 76; *Hensley v. Illinois State Police*, 2012 IL App (3d) 110011-U, ¶ 14; *Hiland*, 373 Ill. App. 3d at 586; *Braglia v. McHenry County State's Attorney's Office*, 371 Ill. App. 3d 790, 792 (2007). However, the courts in all of these cases were interpreting and applying versions of the FOID Act that predated the 2013 amendments. As we noted earlier, those previous versions of the law permitted courts to override a federal disqualification. By enacting the 2013 amendments, however, the General Assembly explicitly foreclosed that avenue of relief under the FOID Act. Thus, these cases do not assist Frederick here, as the 2013 amendments apply.

¶ 32    We acknowledge that Justice Karmeier's lead opinion in *Coram*, which was joined by two other justices, briefly noted "in passing" the 2013 amendments to the FOID Act, but opined that they did not change the ability of courts to override the federal prohibition. *Coram*, 2013

IL 113867, ¶ 75. However, four justices (a majority of the Illinois Supreme Court) concluded the opposite: that the 2013 amendments did indeed prevent a circuit court from overlooking the federal prohibition. In the special concurrence, Justice Burke (joined by Justice Freeman) stated that "[t]he amendments make clear that a circuit court no longer has the authority to make findings or grant relief under section 10 if the court concludes that the applicant would be in violation of federal law if he or she were to possess a firearm." *Id*. ¶ 101 (Burke, J., specially concurring, joined by Freeman, J.). Similarly, in the dissent, Justice Theis (joined by Justice Garman) agreed that, "under the amended statute, the relief procedures under section 10 cannot remove a federal firearms disability," commenting that the 2013 amendments clarified the General Assembly's "intent to make the Act consistent with the prohibitions on firearm possession established under federal law, including section 922(g)(9)." *Id*. ¶ 124 (Theis, J., dissenting, joined by Garman, J.).

¶ 33   As the proper construction of the 2013 amendments was not at issue in *Coram*—it was undisputed that the earlier version of the FOID Act applied—the extent to which the various justices' interpretations of those amendments should be considered binding is not altogether clear. See *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 236 (2010) (although not controlling, judicial *dictum* rendered after in-depth consideration of an issue is "entitled to much weight, and should be followed unless found to be erroneous" (internal quotation marks omitted)); *People v. Lampitok*, 207 Ill. 2d 231, 238 (2003) (when a majority of "[t]he concurring and dissenting justices agree on the resolution of some issues *** they become the holding" of the court, "even though they are not found in the principal order"); *cf*. 5 Am. Jur. 2d *Appellate Review* § 563 (2007) ("[P]lurality decisions of a state supreme court, in which no majority agrees to the reasoning, are not binding under the doctrine of stare decisis ***. Such decisions *** are not authority on any point concurred in by less than a majority.").

¶ 34    A majority of the justices in *Coram* agreed that, under the 2013 amendments, a circuit court may no longer grant relief to a petitioner whose possession of a gun or ammunition would violate federal law.   Even if this majority consensus cannot be considered binding precedent owing to the fragmented nature of the disposition in *Coram*, at a minimum it supports our interpretation of the 2013 amendments as precluding the issuance of a FOID card to Frederick. The circuit court's order requiring the Department to issue a FOID card to Frederick is contrary to the statute and must be reversed.

¶ 35                                        III. CONCLUSION

¶ 36    The judgment of the circuit court of Stephenson County is reversed.

¶ 37    Reversed.