# Illinois Official Reports

## Appellate Court

---

### *Sykes v. Schmitz*, 2019 IL App (1st) 180458

---

| | |
|---|---|
| Appellate Court Caption | CORY SYKES, Plaintiff-Appellant, v. LEO P. SCHMITZ, Director of State Police, Defendant-Appellee (The Cook County State's Attorney's Office, Respondent-Appellee). |
| District & No. | First District, Third Division<br>Docket No. 1-18-0458 |
| Filed | March 20, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-CH-13588; the Hon. Sophia H. Hall, Judge, presiding. |
| Judgment | Vacated and remanded with instructions. |
| Counsel on Appeal | James A. Payonk Jr., of James A. Payonk, Jr., P.C., of Orland Park, for appellant.<br><br>Kwame Raoul, Attorney General, and Kimberly M. Foxx, State's Attorney, both of Chicago (David L. Franklin, Solicitor General, Katelin B. Buell, Assistant Attorney General, and Cathy McNeil Stein, Paul Castiglione, Martha-Victoria Jimenez, and Marie D. Spicuzza, Assistant State's Attorneys, of counsel), for appellees. |

Panel                    JUSTICE ELLIS delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the
judgment and opinion.

**OPINION**

¶ 1     In Illinois, if an applicant for a Firearm Owners Identification Card has been convicted of a felony, the Illinois State Police may deny the application on that basis alone. But the applicant can petition for relief from that denial. In some instances, that petition must be directed to the Director of the State Police (Director). But for certain disqualifying offenses in an applicant's background, that petition may be made in the circuit court. See 430 ILCS 65/8(c), 10(a), 10(c) (West 2014).

¶ 2     This case ultimately turns on which avenue our plaintiff was allowed to take—a petition to the Director or to the circuit court. It involves the interpretation of a poorly drafted statute. But our reading is that plaintiff was required to petition the Director, not the circuit court. Here, however, plaintiff petitioned the circuit court. Because the circuit court lacked subject-matter jurisdiction to hear the petition, we vacate the circuit court's order and remand with instructions to dismiss the petition for lack of jurisdiction.

¶ 3                          BACKGROUND

¶ 4     In 1996, plaintiff Corey Sykes pleaded guilty to possession of a controlled substance, a Class 4 felony violation of the Illinois Controlled Substances Act (720 ILCS 570/100 *et seq.* (West 1996)). He received two years' probation. Nearly 20 years later, he applied for a Firearm Owners Identification Card (FOID Card) with the Illinois State Police (ISP). In May 2015, the ISP denied that application. All parties agree that, due to his 1996 conviction, the ISP's denial was proper. See *id.* § 8(c).

¶ 5     So plaintiff filed a petition for relief from that prohibition under section 10(a) of the Firearm Owners Identification Card Act (FOID Card Act). See *id.* § 10(a). He filed that petition with the circuit court, not the Director. The Cook County State's Attorney filed an objection to plaintiff's petition. The trial court held an evidentiary hearing and denied plaintiff relief.

¶ 6     Plaintiff timely appealed to this court. After an initial review, we ordered supplemental briefing on the issue of the court's subject-matter jurisdiction under section 10(a).

¶ 7                          ANALYSIS
¶ 8                              I
¶ 9     We have a duty to consider the court's subject-matter jurisdiction, even if the parties do not raise it, and even if (as here) the parties all believe that jurisdiction properly attached below. *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 333-34 (2002); *Fuller v. Department of State Police*, 2019 IL App (1st) 173148, ¶ 15. Subject-matter jurisdiction is conferred by our constitution, which places original jurisdiction in the circuit court for virtually all "justiciable matters," except that the courts' power to "review administrative action" is governed by state statute. Ill. Const. 1970, art. VI, § 9; *Belleville*

*Toyota*, 199 Ill. 2d at 334. The action before us is a review of administrative action. See *People v. Frederick*, 2015 IL App (2d) 140540, ¶ 13. So our jurisdiction is governed by statute. *Town & Country Utilities, Inc. v. Illinois Pollution Control Board*, 225 Ill. 2d 103, 122 (2007).

¶ 10    Specifically, the court's jurisdiction is governed by section 10(a) of the FOID Card Act. See *Frederick*, 2015 IL App (2d) 140540, ¶ 13. Section 10(a) provides as follows:

"Whenever an application for a [FOID] Card is denied ***, *the aggrieved party may appeal to the Director of State Police* for a hearing upon such denial ***, *unless* the denial *** was based upon a forcible felony, stalking, aggravated stalking, domestic battery, *any violation of the Illinois Controlled Substances Act, the Methamphetamine Control and Community Protection Act, or the Cannabis Control Act that is classified as a Class 2 or greater felony*, any felony violation of Article 24 of the Criminal Code of 1961 or the Criminal Code of 2012, or any adjudication as a delinquent minor for the commission of an offense that if committed by an adult would be a felony, *in which case the aggrieved party may petition the circuit court* in writing in the county of his or her residence for a hearing upon such denial ***." (Emphases added.) 430 ILCS 65/10(a) (West 2014).

¶ 11    In interpreting this language, we start, as always, with the plain language of the statute, the best indicator of discerning the legislature's intent. *Oswald v. Hamer*, 2018 IL 122203, ¶ 10. If the plain language is unambiguous, we apply it without resort to other aids of statutory construction. *People ex rel. Madigan v. Kinzer*, 232 Ill. 2d 179, 184 (2009).

¶ 12    The language of section 10(a), quoted above, provides that an aggrieved FOID Card applicant may only file his petition with the Director "unless" the disqualifying felony conviction falls within one of the enumerated felonies listed, "in which case" the aggrieved applicant may petition the circuit court. 430 ILCS 65/10(a) (West 2014).

¶ 13    For context, recall that the disqualifying felony conviction in plaintiff's past was a Class 4 felony conviction for a violation of the Controlled Substances Act. So that implicates language in the middle of the long passage that is subsection (a) of section 10. That is, plaintiff could not petition the circuit court directly "unless" his disqualifying felony fell within this category:

"any violation of the Illinois Controlled Substances Act, the Methamphetamine Control and Community Protection Act, or the Cannabis Control Act that is classified as a Class 2 or greater felony." *Id.*

¶ 14    The question, then, is whether a Class 4 felony violation of the Controlled Substances Act is described within this language quoted above. The Director (joined by the other parties) says it is, because "*any* violation of the Illinois Controlled Substances Act" would include, of course, a Class 4 felony violation. (Emphasis added.) *Id.*

¶ 15    But there is that pesky modifying phrase at the end of the language quoted above: "that is classified as a Class 2 or greater felony." *Id.* Does that language apply just to the drug statute immediately preceding it, the "Cannabis Control Act?" Or does it apply to all three of the drug statutes referenced, including the Controlled Substances Act? Because if it is the latter, then plaintiff's Class 4 felony violation would *not* fall within this language, as it was not a "Class 2 or greater" felony violation of the Controlled Substances Act. *Id.*

¶ 16    Section 10(a) is anything but a model of legislative draftsmanship. Even this isolated passage we are discussing was written in clunky fashion. Yet we think the answer is clear: The modifying phrase "that is classified as a Class 2 or greater felony" applies to violations of any

- 3 -

of the three drug statutes referenced, not just the last of those statutes, the Cannabis Control Act.

¶ 17 We need only ask this simple but dispositive question: What does this modifying phrase modify? The Director, of course, says it modifies only the language immediately preceding it—the "Cannabis Control Act." *Id.* But that cannot be true, because then the thing "that is classified as a Class 2 or greater felony" would be the Cannabis Control Act. And no law—not the Cannabis Control Act or any statute—is "classified" as a "felony" of any kind. Statutes are not felonies. They are statutes.

¶ 18 So do we back it up further and say that the phrase "that is classified as a Class 2 or greater felony" modifies all three of the referenced drug laws? No, for the same reason. A statute is not, itself, "classified" as a felony.

¶ 19 The answer is that we back it up further still, to the reference to a "violation." To string it together: "any violation [of the three referenced drug laws] that is classified as a Class 2 or greater felony." *Id.* That is the only interpretation that makes sense, because only a *violation* of a statute can be "classified" as a felony or misdemeanor. That is how each of these three statutory schemes prohibiting various drugs read, throughout their schemes. See, *e.g.*, 720 ILCS 570/216(c) (West 2014) (Illinois Controlled Substances Act) ("A violation of this Section is a Class A misdemeanor. A second or subsequent violation of this Section is a Class 4 felony."); 720 ILCS 646/25(a)(2) (West 2014) (Methamphetamine Control and Community Protection Act) ("A person who violates paragraph (1) of this subsection (a) is guilty of a Class 1 felony."); 720 ILCS 550/5.3(c) (West 2016) (Cannabis Control Act) ("A person who violates this Section is guilty of a Class 2 felony.").

¶ 20 Indeed, that is how all criminal statutes read. They provide that the *violation of* their provisions is classified as a certain felony or misdemeanor. A person does not commit a felony or any crime until he or she violates a law. Some version of the word "violate" always appears in the provision designating the classification of an offense as a felony or misdemeanor of some degree. So it would be odd, to say the least, to claim that here, in section 10(a) of the FOID Card Act, it is the "Cannabis Control Act" that would be "classified as a Class 2 or greater felony" and *not* a "violation of" that and the other statutes that is so classified.

¶ 21 With that understanding, the rest is academic. There can be no doubt that the phrase "any violation of" incorporates each of the three drug laws that follow it: any violation of the Controlled Substances Act, any violation of the methamphetamine statute, and any violation of the Cannabis Control Act. This entire phrase—"any violation of the Illinois Controlled Substances Act, the Methamphetamine Control and Community Protection Act, or the Cannabis Control Act"—acts as one bloc. Which means that the closing modifier—"that is classified as a Class 2 or greater felony"—modifies the entire bloc. That is, it modifies a "violation of" *any* of the three referenced drug statutes, not just the Cannabis Control Act.

¶ 22 Consider, as well, how easy it would have been for the General Assembly to apply that modifying phrase only to the Cannabis Control Act, if that were its intent. If the General Assembly wanted to include "any" violation of the Controlled Substances Act or the methamphetamine statute, but only "Class 2 or greater felony" violations of the Cannabis Control Act, it would not have strung those three statutes together as a bloc, with the word "violation" *before* them and the modifying phrase *after* them.

¶ 23 Instead, the General Assembly would have said something along the lines of this: "any violation of the Illinois Controlled Substances Act or the Methamphetamine Control and

- 4 -

Community Protection Act" and then, as an independent clause within the long list in section 10(a), it would have said, "any violation of the Cannabis Control Act that is classified as a Class 2 or greater felony." Then it would be clear that the phrase "that is classified as a Class 2 or greater felony" modified only the words "violation of the Cannabis Control Act" and not violations of the other drug statutes.

¶ 24    If that sounds overly technical, consider once again section 10(a)'s list of qualifying offenses:

> "a forcible felony, stalking, aggravated stalking, domestic battery, any violation of the Illinois Controlled Substances Act, the Methamphetamine Control and Community Protection Act, or the Cannabis Control Act that is classified as a Class 2 or greater felony, any felony violation of Article 24 of the Criminal Code of 1961 or the Criminal Code of 2012, or any adjudication as a delinquent minor for the commission of an offense that if committed by an adult would be a felony." 430 ILCS 65/10(a) (West 2014).

¶ 25    This list covers many different offenses and treats them quite differently. Some offenses are referred to generally as a category ("forcible felon[ies]"). *Id.* Some are identified by name (stalking, aggravated stalking, domestic battery). Some are referenced more generally by a comprehensive statutory scheme of laws (the drug laws we have discussed or article 24 of the relevant criminal code, concerning the use of "deadly weapons"). As to some offenses, any felony conviction will apply. As to others, only felony convictions of Class 2 or greater apply. Some offenses are not limited to felony versions, and the applicant need not have even been convicted of the offense. See, *e.g.*, *Frederick*, 2015 IL App (2d) 140540, ¶ 16 (applicant need not have been convicted of domestic battery under section 10(a) to petition circuit court directly); *Miller v. Department of State Police*, 2014 IL App (5th) 130144, ¶ 22 (same).

¶ 26    In other words, the General Assembly did not merely lump all these offenses together in one string cite. Section 10(a) does contain one long string of qualifying offenses, to be sure, but the General Assembly treated various categories of offenses differently, as just described. So had the General Assembly wanted to treat violations of the Cannabis Control Act differently than those of the Controlled Substances Act and the Methamphetamine Act, there is no reason why it would not have separated out the reference to the Cannabis Control Act in a far clearer manner, as it did with the other various offenses listed.

¶ 27    In sum, plaintiff was permitted to petition the circuit court only if his disqualifying conviction fell within the category of "any violation of the Illinois Controlled Substances Act *** that is classified as a Class 2 or greater felony." 430 ILCS 65/10(a) (West 2014). His Class 4 felony conviction did not fall within that category. So his only recourse was to petition the Director. *Id.* § 10(c). The circuit court lacked subject-matter jurisdiction over his petition.

¶ 28                                          II

¶ 29    The Director (whom the other parties join) raises several arguments why we are reading the statute incorrectly. We will take them in turn.

¶ 30                                          A

¶ 31    The first is that we should defer to the interpretation of the Director, as he is the head of the state agency charged with enforcing the FOID Card Act. See *People ex rel. Madigan v. Illinois*

*Commerce Comm'n*, 2015 IL App (1st) 140275, ¶ 24 (court gives "substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with the administration and enforcement of the statute" (internal quotation marks omitted)). For several reasons, we disagree.

¶ 32    For one thing, section 10(a) is a subject-matter jurisdictional provision. We seriously question the wisdom of allowing an executive-branch official to define a court's subject-matter jurisdiction, even if it is, in this case, a special statutory jurisdiction. The constitution reserves the question of subject-matter jurisdiction to a court. True, in this context of reviewing administrative action, that jurisdiction is determined by state statute. See Ill. Const. 1970, art. VI, § 9; *Belleville Toyota*, 199 Ill. 2d at 334. Still, a court, and no one else, must interpret that statute to determine the scope of its own jurisdiction. This would be the first we have heard of a court handing over the determination of its subject-matter jurisdiction to an executive-branch official.

¶ 33    Along those same lines, we question why we would defer to the Director here, in any event. We can think of no reason why an agency director would be any better suited at reading a provision governing the court's subject-matter jurisdiction. After all, we are not construing technical terms of art in the industry, with which the expert administrative agency is more familiar and better suited to understand and place in the appropriate context, compared to a bunch of lawyers in black robes. *Cf.*, *e.g.*, *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL App (1st) 150425, ¶ 20 (deferring to Illinois Commerce Commission's interpretation of "formula rate structure" in Public Utilities Act); *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 97-98 (1992) (deferring to medical licensing board's understanding of what behavior by doctor constitutes "dishonorable, unethical or unprofessional conduct of a character likely to deceive, defraud or harm the public" (internal quotation marks omitted)). We cannot imagine how the Director's expertise and experience make him more any more adept at the intricacies of statutory construction.

¶ 34    Third, we do not defer to an agency's interpretation unless we find the language of the statute ambiguous. *Abrahamson*, 153 Ill. 2d at 98; *Commonwealth Edison Co.*, 2016 IL App (1st) 150425, ¶ 19. We do not find this language ambiguous. Poorly drafted, yes, but not ambiguous. And in any event, deferring to an administrative agency's interpretation is not the same thing as accepting whatever it says. We will reject that interpretation if it is unreasonable or erroneous. *General Motors Corp. v. State of Illinois Motor Vehicle Review Board*, 224 Ill. 2d 1, 13 (2007); *People ex rel. Madigan*, 2015 IL App (1st) 140275, ¶ 24; *Village of Roselle v. Roselle Police Pension Board*, 382 Ill. App. 3d 1077, 1082 (2008). Such is the case here.

¶ 35                                             B

¶ 36    The Director next cites the "last antecedent" doctrine for his interpretation. "[T]he last antecedent doctrine provides that relative or qualifying words or phrases in a statute serve only to modify words or phrases which are immediately preceding." *People v. Davis*, 199 Ill. 2d 130, 138 (2002). Thus, says the Director, the phrase "that is classified as a Class 2 or greater felony" (430 ILCS 65/10(a) (West 2014)) must be read as only modifying the words that immediately precede it—the "Cannabis Control Act." *Id.*

¶ 37    That doctrine supports our interpretation, and we have already explained why. The "phrase" that "immediately preced[es]" the modifier "that is classified as a Class 2 or greater felony" in section 10(a) can only be the phrase that backs up all the way to the words "any

- 6 -

violation of." Any other interpretation would make no sense at all; it would mark the first time in the history of Illinois statutory drafting that the General Assembly considered a statute, itself, to be "classified" as a felony, instead of a "violation of" that statute being so classified.

¶ 38    So one way of looking at this is that our interpretation is in line with the "last antecedent" rule. We are attaching the modifier "that is classified as a Class 2 or greater felony" to the (properly identified) phrase that immediately precedes it.

¶ 39    Or, if one would argue that a rigid, technical application of the "last antecedent" rule requires us to attach the modifier "that is classified as a Class 2 or greater felony" only to the phrase "Cannabis Control Act" that immediately precedes it, we would have to reject the application of that rule here, because it would lead to an absurd reading of the statute. The "cardinal principle" of statutory interpretation, superseding all others, is determining the legislature's intent. *Oswald*, 2018 IL 122203, ¶ 10. We believe our interpretation has done so, based on the plain language. So even if the Director were somehow correct in his reference to the "last antecedent" doctrine, that rule of construction, like any other, must yield when it would be inconsistent with legislative intent. See *In re E.B.*, 231 Ill. 2d 459, 467 (2008) (following last antecedent doctrine "unless the intent of the legislature, as disclosed by the context and reading of the entire statute," requires different interpretation).

¶ 40    Either way, the "last antecedent" doctrine does not lead us to a different reading of section 10(a).

¶ 41                                          C

¶ 42    The Director further argues that *Miller*, 2014 IL App (5th) 130144, supports his interpretation. It does not.

¶ 43    In *Miller*, the ISP revoked Miller's FOID Card on the stated grounds that he had been *charged with* unlawful possession of a controlled substance and domestic battery. *Id.* ¶¶ 2, 12. (He was later convicted of both offenses, but this court held that the ISP was stuck with its stated basis, which only concerned *charges* of those offenses.) Miller filed a section 10 petition for relief with the circuit court. *Id.* ¶ 3. The ISP challenged the circuit court's jurisdiction under section 10(a), arguing that section 10(a) only allows a direct petition to the circuit court if the aggrieved applicant was *convicted* of those offenses. *Id.* ¶ 18. This court held that section 10(a) allowed a direct petition to the circuit court even based on a *charge* of domestic battery, because the plain language of that statute did not require a conviction for domestic battery. *Id.* ¶ 22.

¶ 44    That was enough to give the circuit court subject-matter jurisdiction over the petition. It was not necessary to consider the other crime charged—unlawful possession of a controlled substance—nor did this court purport to do so. It is true, however, that in its preliminary discussion of the facts, this court wrote this: "The petition was filed pursuant to section 10 of the Act [citation], which allows an aggrieved party to appeal directly to the circuit court following a denial or revocation of a FOID card where the denial or revocation was 'based upon,' *inter alia*, a domestic battery or any violation of the Illinois Controlled Substances Act." *Id.* ¶ 3.

¶ 45    Later, again generally discussing section 10(a), the court wrote that "section 10(a) of the Act provides that an aggrieved party may appeal to the circuit court if the revocation of his

FOID card was 'based upon' one of the enumerated offenses, *inter alia*, domestic battery and any violation under the Illinois Controlled Substances Act." *Id.* ¶ 19.

Again, however, in neither instance did this court follow up with any substantive discussion whatsoever of how violations of the Controlled Substances Act are treated under section 10(a), because it was not pertinent to the court's holding. *Miller* stands simply for the proposition that, for certain offenses listed in section 10(a), such as domestic battery, the aggrieved applicant need not have been *convicted* of the charge to directly petition to the circuit court. *Id.* ¶ 22. The court's brief references to the portion of section 10(a) regarding violations of the Controlled Substances Act were mere *dicta*. *Miller* does not change our conclusion.

D

Finally, the Director argues that the legislative history of section 10(a) supports his conclusion. We need not resort to legislative history if we find the language unambiguous. *People v. Collins*, 214 Ill. 2d 206, 214 (2005). And we have so found here. Yet even if we agreed that resort to legislative history were appropriate, that history can only lead to one conclusion—that our interpretation, not the Director's, is the correct one.

Before 2005, the language of section 10(a) did not include any reference to the Methamphetamine Control and Community Protection Act, because that act did not exist. The language in Section 10(a), back then, provided that an aggrieved applicant could directly petition the circuit court for relief from prohibition if his denial was based, among other things, on

> "any violation of either the Illinois Controlled Substances Act or the Cannabis Control Act that is classified as a Class 2 or greater felony." 430 ILCS 65/10(a) (West 2004).

Now *that* language is clear beyond any doubt. Even the Director concedes (no small concession) that under that language, the modifier "that is classified as a Class 2 or greater felony" applied to violations of each of the two drug statutes referenced, *including* the Controlled Substances Act. The Director agrees that the language was clear back then because "there was no comma differentiating" the two drug statutes and due to the presence of the word "either."

In contrast, when section 10(a) was amended in 2005, it read in pertinent part as it does today:

> "any violation of the Illinois Controlled Substances Act, the Methamphetamine Control and Community Protection Act, or the Cannabis Control Act that is classified as a Class 2 or greater felony." 430 ILCS 65/10(a) (West 2014).

The Director is right—now there are commas, and the word "either" disappeared. So those are difference between the pre-2005-amended section 10(a) and today's version, but we are not sure how that helps him. There are commas now because section 10(a) now lists three, not two, predicate statutory schemes. We would expect formal writing to forgo a comma to separate two different options ("A or B"), because the "or" does the separating just fine by itself. But we would use commas to separate more than two options ("A, B, or C"). So the presence of commas strikes us as less an indicator of legislative intent and more a desire to use proper grammar.

- 8 -

¶ 53    We would say the same thing regarding the deletion of the word "either" in the 2005 amendment. That is, because the number of statutes changed from two to three, "either" had to go. It seems to be a commonly held belief that the word "either" only refers to two options, and not to more than two. We are not sure that is universally true as a matter of strict grammar, but that is how the dictionaries seem to principally define "either": "being the one or the other of two"; "one or the other of two"; "Used before the first of two (or occasionally more) given alternatives (the other being introduced by 'or')."[1]

¶ 54    So the fact that commas were inserted into the language as it now appears, and that the word "either" was deleted, does not seem to speak one way or the other as to legislative intent.

¶ 55    Those technical points aside, there is a more fundamental reason why the legislative history does not support the Director's position. As even the Director concedes, up until the 2005 amendment, the language of section 10(a) permitted a direct petition to the circuit court only for Class 2 or greater felony convictions of the Controlled Substances Act—the modifying language, in other words, applied to violations of the Controlled Substances Act.

¶ 56    So if we are to accept the Director's argument that this modifying language no longer does so, post-2005 amendment, it must mean that the General Assembly made the judgment, in the 2005 amendment, to make a substantive change to the FOID Card law—to no longer permit direct appeals of FOID Card denials only for Class 2 felony violations of the Controlled Substances Act but, instead, to now open up direct petitions to the circuit court for denials based on *any* violation of the Controlled Substances Act.

¶ 57    But there is no indication whatsoever that the General Assembly so intended and every reason to believe that the General Assembly was paying absolutely no attention to that issue. We say that because the public act that amended section 10(a) in 2005 was concerned with one and only one thing—stopping the expanding scourge of methamphetamine abuse.

¶ 58    Public Act 94-556 created the Methamphetamine Control and Community Protection Act, whose purpose was to combat the "manufacture, distribution, and use of methamphetamine *** in Illinois." Pub. Act 94-556, §§ 1, 5 (eff. Sept. 11, 2005). The General Assembly believed that methamphetamine required its own statutory scheme, separate from the Controlled Substances Act, because "methamphetamine is not only distributed and used but also manufactured here, and because the manufacture of methamphetamine is extremely and uniquely harmful." *Id.* § 5.

¶ 59    The public act is over 400 pages. First, it created the underlying Methamphetamine Control and Community Protection Act itself. See *id.* §§ 1-110. And it repealed some existing provisions regarding methamphetamines in favor of the new, comprehensive act. See *id.* § 1056. The rest of the public act—well over 300 pages of it—is devoted to incorporating references to this new act into over 100 other statutes throughout the Illinois Compiled Statutes. See *id.* §§ 901-1120.

¶ 60    In nearly every amendment to over 100 different existing state statutes, the General Assembly did little more than insert a reference to this new methamphetamine law next to a

_____

[1] See, respectively, Merriam-Webster, https://www.merriam-webster.com/dictionary/either (last visited Mar. 13, 2019) [https://perma.cc/6WLA-ANNV]; Dictionary.com, https://www.dictionary.com/browse/either (last visited Mar. 13, 2019) [https://perma.cc/4RDY-K4V5]; English Oxford Living Dictionaries, https://en.oxforddictionaries.com/definition/either (last visited Mar. 13, 2019) [https://perma.cc/8V4T-XJVR].

reference to the Controlled Substances Act—in statutes regarding such things as background checks, bans on employment, schools, drug testing, addiction treatment services, and the like. Other than adding those references to the new methamphetamine law, however, that public act made no substantive change whatsoever to existing law.

¶ 61 And that is precisely what the General Assembly did in the portion of the public act that amended section 10(a), which made the change we have discussed at length, in pertinent part as follows (with deleted language struck through and added language italicized):

> "a forcible felony, stalking, aggravated stalking, domestic battery, any violation of either the Illinois Controlled Substances Act, *the Methamphetamine Control and Community Protection Act,* or the Cannabis Control Act that is classified as a Class 2 or greater felony, any felony violation of Article 24 of the Criminal Code of 1961, or any adjudication as a delinquent minor for the commission of an offense that if committed by an adult would be a felony." Pub. Act 94-556, § 1035 (eff. Sept. 11, 2005) (amending 430 ILCS 65/10).

¶ 62 With such a narrow focus on combating the growing epidemic of methamphetamine abuse in Illinois and given that nothing else in that massive public act made any other substantive change to over 100 existing state statutes, we find it next to impossible to believe that the General Assembly meant to slip in one other item, too, under the radar: a substantive change to which kinds of disqualifying felony drug convictions would allow an aggrieved FOID Card applicant to petition for relief directly to the circuit court. We find no hint whatsoever that the General Assembly was focused on making such a substantive change to the FOID Card statute in this public act. The deletion of the word "either" and the addition of commas were purely grammatical considerations that do not suggest a contrary legislative intent.

¶ 63 The only reasonable conclusion is that the General Assembly merely added the new methamphetamine law alongside the Controlled Substances Act, as it did in countless other places throughout the Illinois Compiled Statutes, without intending any substantive change beyond that addition.

¶ 64 Thus, our review of the legislative history of section 10(a), though unnecessary, only supports our interpretation of that provision. As it unquestionably did before the 2005 amendment, section 10(a) continues today to permit direct petitions to the circuit court only when the disqualifying conviction is a "Class 2 or greater felony" violation of the Controlled Substances Act.

¶ 65 As plaintiff's disqualifying conviction was a Class 4 felony, his only recourse was a petition to the Director. The circuit court lacked subject-matter jurisdiction over plaintiff's petition.

¶ 66                                             CONCLUSION

¶ 67 We vacate the circuit court's judgment and remand with instructions to dismiss the cause for lack of subject-matter jurisdiction. We express no opinion on the merits of plaintiff's petition.

¶ 68 Vacated and remanded with instructions.