BOWNE OF CHICAGO, INC., Plaintiff-Appellant, v. THE HUMAN RIGHTS COMMISSION *et al.*, Defendants-Appellees (Dorothy Jackson-Jordan, Nominal Defendant).

First District (4th Division)   No. 1—97—3843

Opinion filed November 5, 1998.

Charles W. Pautsch and Joseph E. Gumina, both of Wessels & Pautsch, P.C., of Milwaukee, Wisconsin, for appellant.

James E. Ryan, Attorney General, of Chicago (Michael P. Doyle, Assistant Attorney General, of counsel), for appellees.

PRESIDING JUSTICE SOUTH delivered the opinion of the court:

Plaintiff, Bowne of Chicago, Inc. (Bowne), brought this action for injunctive relief and damages against defendants, the Illinois Department of Human Rights (Department) and the Illinois Human Rights Commission (Commission). Bowne's suit sought to enjoin the Commission from hearing a civil rights complaint that the Department brought against Bowne on behalf of the nominal defendant, Dorothy Jackson-Jordan. It also sought damages against the Department for failing to cease its investigation against Bowne and for filing the complaint. The circuit court dismissed Bowne's complaint pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1996)) and Bowne appeals.

On March 27, 1992, Jackson-Jordan filed a charge with the Department alleging that Bowne violated her rights under the Illinois Human Rights Act (Act) (775 ILCS 5/1—101 *et seq.* (West 1996)). Jackson-Jordan amended the charge on September 1, 1994. The Department conducted an investigation and filed a complaint with the Commission on January 7, 1997, approximately 1,747 days after Jackson-Jordan filed her original charge, alleging that Bowne subjected her to sexual harassment in violation of section 2—102(D) of the Act (775 ILCS 5/2—102(D) (West 1996)).

On January 31, 1997, Bowne filed with the Commission a motion to dismiss Jackson-Jordan's complaint. Bowne asserted in its motion to dismiss that the complaint filed by the Department on behalf of

Jackson-Jordan was untimely pursuant to section 7A—102(G)(1) of the Act in that the complaint was filed by the Department beyond 365 days from the filing of the underlying charge; thus, the Commission lacked subject matter jurisdiction. On April 30, 1997, the Commission, by the presiding administrative law judge, denied Bowne's motion to dismiss on the grounds that the term "causes of action," as used in section 7A—102(H), means "charge" and not "complaint" and ordered Bowne to answer the Department's complaint.

■ On May 15, 1997, Bowne filed a complaint in the circuit court. In its complaint, Bowne asked the circuit court to permanently enjoin the Commission from adjudicating the complaint brought on Jackson-Jordan's behalf. Bowne alleged that the Commission lacked the statutory authority and jurisdiction to adjudicate said matter in that the complaint filed by the Department with the Commission was untimely pursuant to section 7A—102(G) (775 ILCS 5/7A—102(G) (West 1996)). Bowne also sought damages against the Department pursuant to section 7A—102(G)(3) of the Act, which provides that the Department may be liable for costs and damages incurred by a respondent where the Department fails to cease an investigation as required under the Act. The relevant portions of the statute regarding the filing of a charge read as follows:

"(G) Time Limit.

(1) When a charge of civil rights violation has been properly filed, the Department, within 365 days thereof or within any extension of that period agreed to in writing by all parties, shall either issue and file a complaint in the manner and form set forth in this Section or shall order that no complaint be issued and dismiss the charge with prejudice without any further right to proceed except in cases in which the order was procured by fraud or duress. Any such order shall be duly served upon both the complainant and the respondent.

(2) Between 365 and 395 days after the charge is filed, or such longer period agreed to in writing by all parties, the aggrieved party may file a complaint with the Commission, if the Director has not sooner issued a report and determination pursuant to paragraphs (D)(1) and (D)(2) of this Section. The form of the complaint shall be in accordance with the provisions of paragraph (F). The aggrieved party shall notify the Department that a complaint has been filed and shall serve a copy of the complaint on the Department on the same date that the complaint is filed with the Commission.

(3) If an aggrieved party files a complaint with the Human Rights Commission pursuant to paragraph (2) of this subsection, or if the time period for filing a complaint has expired,

the Department shall immediately cease its investigation and dismiss the charge of civil rights violation. Any final order entered by the Chief Legal Counsel under this Section is appealable in accordance with paragraph (A)(1) of Section 8—111. Failure to immediately cease an investigation and dismiss the charge of civil rights violation as provided in this paragraph (3) constitutes grounds for entry of an order by the circuit court permanently enjoining the investigation. The Department may also be liable for any costs and other damages incurred by the respondent as a result of the action of the Department.

(4) The Department shall stay any administrative proceedings under this Section after the filing of a civil action by or on behalf of the aggrieved party under any federal or State law seeking relief with respect to the alleged civil rights violation.

(H) This amendatory Act of 1995 applies to causes of action filed on or after January 1, 1996." 775 ILCS 5/7A—102(G), (H) (West 1996).

The Department and the Commission filed a motion to dismiss Bowne's complaint under section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1996)). The court granted the motion and dismissed Bowne's complaint with prejudice.

Bowne asserts that section 7A—102 of the Act bars the Commission from adjudicating Jackson-Jordan's claim because the Department filed a complaint on her behalf more than 365 days after she filed her charge with the Department.

The statute states that Public Act 89—370's amendments (Pub. Act 89—370, § 5, eff. August 18, 1995) apply to "causes of action filed on or after January 1, 1996." 775 ILCS 5/7A—102(H) (West 1996). However, the Act does not precisely define the meaning of "causes of action" as it relates to the Act. As both plaintiff and defendants argue, the determination of whether "causes of action" means charges or complaints is dispositive of this case. If "causes of action" means "charges," then Public Act 89—370's amendments do not apply since Jackson-Jordan filed her charge in 1992. Thus, the Commission could adjudicate her claim. However, if "causes of action" means "complaint," then Jackson-Jordan's complaint filed in January 1997 must be dismissed as untimely pursuant to the time limits set by the amendments to section 7A—102 of the Act. The interpretation of the meaning of "causes of action" as used in this statute is one of first impression.

■ ■ The fundamental principle of statutory construction is to ascertain and give effect to the legislature's intention. *Varelis v.*

*Northwestern Memorial Hospital*, 167 Ill. 2d 449, 454, 657 N.E.2d 997, 999 (1995). If that language is clear, it must be given effect without resorting to any extrinsic aids for guidance. *Spinelli v. Immanuel Evangelical Lutheran Congregation, Inc.*, 144 Ill. App. 3d 325, 329, 494 N.E.2d 196, 200 (1986). Where the statute is ambiguous, it is proper to consider various extrinsic aids, including the legislative history and the remarks made by the legislators during debate on the legislation. *Spinelli*, 144 Ill. App. 3d at 330, 494 N.E.2d at 200. To properly interpret a statute, the court must consider the nature, object and consequences of construing the statute one way as opposed to another. *Davis v. Human Rights Comm'n*, 286 Ill. App. 3d 508, 519, 676 N.E.2d 315, 323 (1997). In construing a broad remedial civil rights statute, it is incumbent upon a reviewing court to do so liberally in order to effectuate the intent of the General Assembly. *Tandy Corp. v. Human Rights Comm'n*, 264 Ill. App. 3d 828, 832, 637 N.E.2d 725, 728 (1994).

■ To determine if the legislature used "causes of action filed on or after January 1, 1996," as meaning "charges filed with the Department" or "complaints filed with the Commission," one must look to such aids as the legislative history, the purposes of the Act, and presumptions that courts apply in construing statutes. Since the language of section 7A—102(H) is ambiguous, these aids are necessary to arrive at an understanding of what the statute means.

Bowne suggests that we look to Black's Law Dictionary 221 (6th ed. 1990), for a definition of "causes of action." This edition of Black's Law Dictionary lists nine possible meanings for "causes of action," among them "[t]he right which a party has to institute a judicial proceeding." Black's Law Dictionary 221 (6th ed. 1990). That definition is used by Bowne to support its position that "causes of action" means the complaint filed with the Commission. However, there is nothing that makes this definition of "causes of action" any better than the other eight definitions listed in explaining the intent of the legislature, particularly as it relates to "causes of action filed on or after January 1, 1996."

Bowne also urges this court to follow *Johnson v. Human Rights Comm'n*, 173 Ill. App. 3d 564, 527 N.E.2d 883 (1988), in which the court stated that a cause of action under the Illinois Human Rights Act originates with the filing of the complaint with the Illinois Human Rights Commission. *Johnson*, 173 Ill. App. 3d at 566, 527 N.E.2d at 884. However, the court in *Johnson* was not interpreting "causes of action" for purposes of the Act. Therefore, neither the Black's Law Dictionary definitions nor the *Johnson* case clarifies what the legislature meant by "causes of action."

■ The policies underlying a statute are often regarded as a valuable source of legislative intent. *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.*, 22 Ill. 2d 305, 317, 175 N.E.2d 785, 791 (1961). Examination of the reason and necessity for the law, the evils that the legislature sought to remedy and the purposes intended to be accomplished is particularly important in cases such as this one, where the statutory language is not clear. *Harvel v. City of Johnston City*, 146 Ill. 2d 277, 283, 586 N.E.2d 1217, 1220 (1992). The primary rule of statutory construction is to ascertain and give effect to the intention of the legislature, and that inquiry appropriately begins with the language of the statute. *People v. Woodard*, 175 Ill. 2d 435, 443, 677 N.E.2d 935, 939 (1997). If the language of a statute is susceptible to two constructions, one of which will carry out its purpose and another which will defeat it, the statute will receive the former construction. *Harvel*, 146 Ill. 2d at 284, 586 N.E.2d at 1220. The courts assume that the legislature will not draft a new law that contradicts an existing one without expressly repealing it and that the legislature intends a consistent body of law when it amends or enacts new legislation. *In re Marriage of Lasky*, 176 Ill. 2d 75, 79, 678 N.E.2d 1035, 1037 (1997).

■ When the language of section 7A—102 is viewed in the light of the policies that motivated the legislature to enact it, it becomes clear that the legislature intended "causes of action" to be a substitute for "charges" filed with the Department. Two of the stated purposes of the Act are to protect individuals from unlawful discrimination (775 ILCS 5/1—102(A) (West 1996)) and to protect persons from unfounded charges of unlawful discrimination (775 ILCS 5/1—102(H) (West 1996)). The first addresses the concerns of employees while the second purpose addresses the concerns of employers. Thus, the intent of the legislature is to strike a balance between employees and employers.

If Bowne's interpretation of section 7A—102 that "causes of action" means complaints filed with the Commission were accepted, that would mean that the thousands of cases that the Department has not acted upon, and thus not filed a complaint with the Commission on or after January 1, 1996, would be dismissed without any determination as to the legitimacy of those charges. This approach to section 7A—102 favors the interests of employers at the expense of employees, many of whom may have valid charges of discrimination. It is doubtful that the legislature intended such a result.

Indeed, it is clear from the legislative history that the legislature did not intend for Public Act 89—370 to apply retroactively. The senate sponsor of Public Act 89—370 expressly stated that "the deadlines in this bill are prospective." 89th Ill. Gen. Assem., Senate Proceedings, May 18, 1995, at 73 (statements of Senator Cronin).

During debates on House Bill 741 (Public Act 89—370 originated as House Bill 741), sponsor Representative Biggert addressed the concerns about how this bill would affect the backlog of cases in the Department:

> "Schakowsky: '*** The department presently has at least 7000 charges awaiting an investigation. If the 365 day limit on investigation becomes law, especially without a substantial increase in appropriation, the department will have two choices: investigate pending charges with no attempt to meet the 365 day deadline or process new charges and leave the 7000 cases in limbo. Either alternative has serious due process implication. Could you reply to that critique?'
> ***
>
> Biggert: 'I think that there is a distinction in new cases after January 1, 1996 when the new law will take effect. For the ones prior, they will still be under the old law where they can last for years and years and right now, we are looking at four and a half years before a complaint is ever brought. So, we are really trying to address that. For the old cases, and this has happened in the industrial commission where there was a huge backlog, and there were special lawyers brought in to try and get rid of the backlog and hopefully, something like that can be done. *** But it still remains to be seen that we need to address the backlog of cases and try and get rid of them.' " 89th Ill. Gen. Assem., House Proceedings, April 25, 1995, at 167-68.

Later, Representative Biggert made the same point in response to a question by Representative Lang:

> "Lang: 'What will your Bill do regarding the backlog of cases?'
> ***
>
> Biggert: '*** This Bill really does not effect [*sic*] any case prior to January 1st of 1996. This Bill really goes into effect for any cases which are filed after that. What we hope to do, is to be able to alleviate the backlog of those cases by funds which might be found in the budget.' " 89th Ill. Gen. Assem., House Proceedings, April 26, 1995, at 273.

It is clear from the comments of these lawmakers that they are addressing the 7,000 backlog cases at the Department, which they did not intend to eliminate by making section 7A—102 retroactive. If it was not the intention of the legislature to deprive employees of their civil rights remedy, then "causes of action" must be read to mean "charges" filed with the Department. Thus, the time limits of Public Act 89—370 do not apply to Jackson-Jordan's charge.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

HOFFMAN and WOLFSON, JJ., concur.