PHILIP S. LIEB, Plaintiff-Appellee, v. THE JUDGES' RETIREMENT SYSTEM OF ILLINOIS *et al.*, Defendants-Appellants.

First District (3rd Division)    No. 1—99—2097

Opinion filed May 17, 2000.—Rehearing denied June 28, 2000.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Jan E. Hughes, Assistant Attorney General, of counsel), for appellants.

Philip S. Lieb, of Chicago, for appellee.

JUSTICE BURKE delivered the opinion of the court:

Defendants, the Judges' Retirement System of Illinois, the board of trustees of the Judges' Retirement System of Illinois, Michael Mory, Michael Bilandic, Charles Freeman, Thomas Hoffman, John Nickels, and Judy Baar Topinka, appeal from an order of the circuit court

reversing, on administrative review, their denial of a request sought by plaintiff, Philip Lieb, to purchase up to two years of retirement military service credit based on the six years that plaintiff had served in the United States armed services (Armed Services) and restricting that purchase to only the six months plaintiff had spent in active duty status. Defendants contend on appeal that they had correctly interpreted the Illinois Pension Code (40 ILCS 5/1—101 *et seq.* (West 1998)) not to allow the purchase of credits for inactive duty. For the reasons set forth below, we reverse.

The background facts in this case are not in dispute and can be summarized as follows. Plaintiff, currently an associate judge in the circuit court of Cook County, fulfilled a six-year enlistment in the Armed Services from April 1961 to March 1967 that consisted of six months of active duty and the balance fulfilled in the Ready Reserves of the United States Army (Ready Reserves). In January 1998, plaintiff submitted a formal request to the Judges' Retirement System of Illinois (the System), seeking to be allowed, as a plan participant and pursuant to section 18—122 of the Illinois Pension Code (commonly referred to as the Judges' Retirement System Act) (Act) (40 ILCS 5/18—122 (West 1998)), to purchase up to two years of military service credit to be applied toward his pension plan benefits. Section 18—122 provides, in pertinent part:

"Participation [in the plan] shall continue until the date a participant becomes an annuitant, dies, or accepts a refund.

Participation shall not cease during any period an eligible judge is serving with the military or naval forces of the United States while the United States is engaged in any war or for one year after such war, if the judge makes contributions, together with any interest payments which might be required, for delayed contribution payments.

A participant may also apply for creditable service for up to 2 years of military service that need not have followed service as a judge and need not have been served during wartime. However, for this military service not immediately following employment as a judge, the applicant must make contributions to the System (1) at the rates provided in Section 18—133 based upon the judge's rate of compensation on the last date as a participating judge prior to such military service, or on the first date as a participating judge after such military service, whichever is greater, plus (2) if payment is made on or after May 1, 1993, an amount determined by the Board to be equal to the employer's normal cost of the benefits accrued for such military service, plus (3) interest at the effective rate from the date of first membership in the System to the date of payment." 40 ILCS 5/18—122 (West 1998).

Subsequent to plaintiff's application to purchase creditable service, the System informed him, by letter dated January 26, 1998, that the "Board of Trustees of the [System] had established a policy that to purchase up to two years of military service [one] must render service in the military on active duty status." The System further informed plaintiff that, in accordance with its policy, it would allow him to purchase credit based on his six months of active military service but would disallow any credit for the remaining period that represented his inactive military service in the Ready Reserves.

Thereafter, plaintiff filed a petition requesting an administrative hearing before defendants. In his petition, plaintiff alleged that he was entitled to exercise his right as a plan participant to purchase up to two years of creditable service relating to the six years he had served as a member of the Armed Services because the Act gives him an "unqualified" right to purchase up to two years of creditable service relating to military service. Plaintiff argued that federal statutory and case law designates the Ready Reserves as part of the armed forces of the United States and its participants as being in military service. Plaintiff also argued that because the Act is uniquely worded and does not contain the same limiting language concerning either active service or duty requiring leaves of absence or furloughs from state employment, as do 13 other pension system statutes, the only way to restrict a judge's right to purchase military service credit for time spent in the Ready Reserves component of the military would be to infer that the legislature had intended, but had failed, to add the appropriate restrictive wording to the statute at issue. Plaintiff further argued, in written arguments presented before defendants, that even if defendants believed that the legislature erred in not including the requirement of "active" military service in the statute, defendants should enforce, rather than change, the statute as passed by the General Assembly.

During a hearing before defendants, plaintiff presented the same arguments in support of his request to purchase military service credit for the time that he had spent in reserve military duty with the Armed Services. Plaintiff argued that the definition of "military service" as generally used means reserve duty as well as active service. Plaintiff also argued that section 18—122 of the Act is clear and unequivocal and, therefore, no extrinsic evidence is permitted to alter or vary the statute's plain meaning.

Subsequent to the hearing, defendants unanimously ruled that the statute allowed plaintiff to purchase credits only for the time he had served on active duty. Defendants issued a written decision on August 25, 1998, reflecting their ruling. In their decision, defendants clarified the issue to be not whether plaintiff was in military service, but

whether he had "participated in the type of military service that is required by Section 18—122 of the Act to entitle [him] (and other similarly situated members) to purchase up to two years of military service credit." Defendants noted that section 18—122 must be read in its entirety because the term "military service" contained within the statute is not "quite so clear as [plaintiff's] arguments would make it seem." Consequently, looking to the statute in its entirety, and then to the legislative history as well as legislative debates to determine the intent of the legislature in allowing for the purchase of creditable military service, defendants concluded that section 18—122 required active military service to purchase up to two years of military service credit.

In September 1998, pursuant to the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 1998)), plaintiff filed a complaint in the trial court for administrative review of defendants' decision, alleging that the plain meaning of the statute allows military service credit without restriction or consideration of whether the military service was either active or inactive duty. Subsequent to the filing of briefs and the hearing of oral arguments on plaintiff's complaint, the trial court entered an order reversing defendants' decision. In reaching its decision, the trial court found the statute to be unambiguous and noted that, even if the statute was ambiguous, the legislature had intended inactive service to qualify as military service under the Act. The trial court granted defendants' subsequent motion to stay, and this appeal followed pursuant to section 3—112 of the Administrative Review Law (735 ILCS 5/3—112 (West 1998)).

On appeal, defendants ask this court to reverse the trial court's decision and reinstate their decision, contending that they had correctly denied plaintiff's request to purchase credits toward his pension for the time that he was on inactive duty with the Ready Reserves because inactive military duty does not constitute "military service" as that term is used in the Illinois Pension Code. In response, plaintiff claims that the decision reached by defendants was erroneous and should not be reinstated because defendants' decision "ignored" the principles of statutory construction. Plaintiff argues that defendants should have given the statute its plain meaning without resort to extrinsic evidence, including legislative history. Plaintiff alternatively argues that, even if it were appropriate to consult legislative debates, defendants misinterpreted the statements made by the legislators concerning section 18—122 of the Act.

Because the facts of this case are undisputed, the sole issue confronting this court is whether defendants correctly interpreted the phrase "military service" in section 18—122 of the Act to bar the

purchase of pension credits for time spent on inactive military duty. Accordingly, this case involves a matter of law subject to our *de novo* review. See *Paris v. Feder*, 179 Ill. 2d 173, 177-78, 688 N.E.2d 137 (1997); *Branson v. Department of Revenue*, 168 Ill. 2d 247, 254, 659 N.E.2d 961 (1995). During our review, we accord some deference to an administrative agency's interpretation of a statute. See *Van's Material Co. v. Department of Revenue*, 131 Ill. 2d 196, 202-03, 545 N.E.2d 695 (1989); *Northwest Airlines, Inc. v. Department of Revenue*, 295 Ill. App. 3d 889, 892, 692 N.E.2d 1264 (1998); *Davis v. Human Rights Comm'n*, 286 Ill. App. 3d 508, 518, 676 N.E.2d 315 (1997). A significant reason for this deference is that the judicial system appreciates the fact that administrative agencies, such as the Board, can make informed judgments based on their experience and expertise. See *Davis*, 286 Ill. App. 3d at 518.

■ The framework for construing a legislative provision, such as section 18—122, is well established. The primary rule of statutory construction is to ascertain and give effect to the legislature's intent. See *Fragakis v. Police & Fire Comm'n*, 303 Ill. App. 3d 141, 149, 707 N.E.2d 660 (1999). This inquiry must begin with the statute's language, giving words their plain and ordinary meaning, yet considering each provision in light of all others. See *Barnett v. Zion Park District*, 171 Ill. 2d 378, 388-89, 665 N.E.2d 808 (1996); *Van's Material Co.*, 131 Ill. 2d at 202; *In re Liquidation of Coronet Insurance Co.*, 298 Ill. App. 3d 411, 415, 698 N.E.2d 598 (1998).

Where a statute is ambiguous, the use of extrinsic aids, including the statute's background and the legislative history and remarks made by the legislators during their debates on the legislation, is appropriate to discern the meaning of a statutory term. See *Kunkel v. Walton*, 179 Ill. 2d 519, 533-34, 688 N.E.2d 90 (1997); *Van's Material Co.*, 131 Ill. 2d at 202; *Bowne of Chicago, Inc. v. Human Rights Comm'n*, 301 Ill. App. 3d 116, 120, 703 N.E.2d 443 (1998). Principles of statutory construction allow an interpretation that qualifies the existing statutory language. See *In re Illinois Bell Switching Station Litigation*, 161 Ill. 2d 233, 246, 641 N.E.2d 440 (1994) (a statute must be construed sensibly "even though such construction qualifies the universality of its language"). Additionally, it has long been held that "[w]hen the intention [of the legislature] has been thus ascertained from the reading of the statute, words may be modified or altered so as to obviate all inconsistencies with such intention." *Smith v. County of Logan*, 284 Ill. 163, 165-66, 119 N.E. 932 (1918); see also *Burns v. Industrial Comm'n*, 356 Ill. 602, 606, 191 N.E. 225 (1934) (words may be altered, modified, or supplied to obviate any inconsistency with legislative intent).

■ In the case at bar, the term "military service" denoted in section 18—122 is ambiguous because it is susceptible to two equally reasonable and conflicting interpretations. Defendants reasonably interpret the term "military service" to mean only time spent in active military duty, while plaintiff reasonably interprets the same term to encompass time spent in both active and inactive military service, including reserve duty. Accordingly, we find that defendants, in their administrative decision, not only correctly read section 18—122 in its entirety, but also looked to the statute's background to determine the meaning of "military service."

Defendants first looked to the second paragraph of section 18—122, which states:

"Participation [in the plan] shall not cease during any period an eligible judge is serving with the military or naval forces of the United States while the United States is engaged in any war or for one year after such war, if the judge makes contributions, together with any interest payments which might be required, for delayed contribution payments." 40 ILCS 5/18—122 (West 1998).

Defendants determined that because the reference to service in the military in this second paragraph of section 18—122 encompasses only active duty, a consistent reading of the statute as a whole would require "military service" in the third paragraph of section 18—122 to also mean active duty only.

Defendants then correctly noted that section 18—122 had been amended by Public Act 87—794, effective November 19, 1991, to add the provision at issue here relating to a participant's application to purchase "creditable service for up to 2 years of military service that need not have followed service as a judge and need not have been served during wartime." 40 ILCS 5/18—122 (West 1998).[1] Defendants also noted that, although the legislature had dropped the requirement that the military service take place during wartime when section 18—122 was amended by Public Act 87—794, the remaining sentences in paragraph 3 of section 18—122, of which plaintiff in his brief on ap-

---

[1]The original version of section 18—122, prior to amendment by Public Act 83—1440, section 1, effective January 1, 1985, provided:

"Participation shall continue until the date a participant becomes an annuitant, dies, or accepts a refund. Participation shall not cease during any period an eligible judge is serving with the military or naval forces of the United States while the United States is engaged in any war or for one year after such war, if the judge makes contributions, together with any interest payments which might be required, for delayed contribution payments." Ill. Rev. Stat. 1989, ch. 108½, par. 18—122.

peal makes no mention, make clear that the General Assembly had not altered the requirement that service in the military encompasses only active duty. The sentences, upon which defendants rely, provide:

> "However, for this military service not immediately following employment as a judge, the applicant must make contributions to the System (1) at the rates provided in Section 18—133 based upon the judge's rate of compensation on the last date as a participating judge prior to such military service, or on the first date as a participating judge after such military service, whichever is greater ***." 40 ILCS 5/18—122 (West 1998).

◼ We find that the above qualifying language regarding how the amount of the contribution is calculated defines "military service" in the context of the statute as a whole. The language of this portion of the statute indicates, in pertinent part, how the contribution amount is calculated, "based upon the judge's rate of compensation on the last date as a participating judge prior to such military service, or on the first date as a participating judge after such military service, whichever is greater." 40 ILCS 5/18—122 (West 1998). As defendants correctly maintain, this language indicates that the judge will be absent from his judicial duties during the period of military service for which the credit is being purchased. In other words, the creditable military service will take place not at a time simultaneous to participation as a judge, e.g., weekend reserve duty, but during a time when the participating judge is not also performing judicial duties. We find that, based upon reading the term "military service" in the context of the statute as a whole, defendants correctly concluded that the legislature intended to restrict the purchase of credits for military service to only that time spent in active military duty. To summarize, we hold that defendants properly determined that "military service" encompassed only active duty service not necessarily performed during wartime and not performed while the participant is serving as a judge and that inactive reserve duty, such as with the Ready Reserves, does not qualify as "military service" as that term is read in its context within section 18—122.

Contrary to plaintiff's argument, we briefly note that the foregoing paragraphs of section 18—122, as discussed above, are not independent of one another. Rather, defendants, in their administrative decision, properly read these two relevant portions of the statute together. See *A.P. Properties, Inc. v. Goshinsky*, 186 Ill. 2d 524, 532, 714 N.E.2d 519 (1999) (legislative intent is determined by reading the statute as a whole and considering all relevant parts).

Plaintiff also argues that defendants erred by implicitly adding the limiting term "active duty" to their construction of the phrase

"military service," and he cites, in support of his argument, *Kunkel v. Walton*, 179 Ill. 2d 519, 689 N.E.2d 1047 (1997), and *Bridgestone/ Firestone*, both of which caution courts against reading limiting provisions into a statute. *Kunkel* and *Bridgestone/Firestone* are distinguishable from the case at bar because the statutory language at issue in both cases was clear on its face and the *Kunkel* and *Bridgestone/ Firestone* courts, therefore, rejected the parties' attempts to attach unwritten conditions to the particular words or phrases. *Kunkel*, 179 Ill. 2d at 534, *Bridgestone/Firestone, Inc. v. Aldridge*, 179 Ill. 2d 141, 151-54 (1997). Here, however, as discussed above, the statutory term "military service" is ambiguous, and therefore, principles of statutory construction allow an interpretation that qualifies the existing statutory language. See *In re Illinois Bell*, 161 Ill. 2d at 246; *Smith*, 284 Ill. at 165-66; *Burns*, 356 Ill. at 606.

Plaintiff further argues that the Board improperly consulted the legislative debates because the term "military service" contained in section 18—122 is unambiguous. This argument is unpersuasive. As discussed above, defendants properly found the term "military service" to be ambiguous. Moreover, the record indicates that plaintiff had argued before defendants, as he did before the trial court, that, when compared to other pension statutes, the Act was uniquely worded to permit duty with the Ready Reserves to qualify as creditable service. Defendants noted plaintiff's argument and found that the difference in the language of the pension system statutes required them to refer to the legislative debates to determine if the legislature intentionally meant to give judges a benefit that others covered under similar pension provisions were not given. We find that, under these circumstances, defendants appropriately used extrinsic aids to discern the meaning of "military service." See *Bowne of Chicago, Inc. v. Human Rights Comm'n*, 301 Ill. App. 3d 116, 120 (1998).

Plaintiff alternatively argues that defendants misconstrued the comments made by the legislators. A close reading of the legislative debates, however, shows that they support the interpretation of the statute reached by defendants. On October 23, 1991, upon presentation of the second conference committee report, a discussion occurred as to the meaning of House Bill 971 (87th Ill. Gen. Assem., House Bill 971, 1991 Sess.), which was passed as Public Act 87—794 (Pub. Act 87—794 , eff. November 19, 1991 (1991 Ill. Laws 4311)). Senator Keats asked Senator Jones, the bill's sponsor, whether the bill applied to time spent in the National Guard and Army Reserves, noting that, if so, it was a "unique method of gaining pension time" such that a plan participant could "buy in" and count the time spent drilling one weekend a month, two weeks each summer, and a few days in be-

tween. 87th Ill. Gen. Assem., Senate Proceedings, October 23, 1991, at 45-46 (statements of Senator Keats). In response, Senator Jones stated: "[A]ll we did [was] expand the provision of military service. There is nothing [in the bill] as it relate[s] to National Guard and ROTC, *et cetera*." 87th Ill. Gen. Assem., Senate Proceedings, October 23, 1991, at 46 (statements of Senator Jones). Subsequent to this conversation, Senator Jones similarly reassured Senator Philip that the bill "does not reference anything as [it] relate[s] to the National Guard and *et cetera* \*\*\* the definition of 'military service' has always been in the articles. All we did was include those two years. So we didn't reference anything as [it] relate[s] to National Guard and *et cetera*." 87th Ill. Gen. Assem., Senate Proceedings, October 23, 1991, at 50-51 (statements of Senator Jones). Senator Jones reiterated that he would agree with the statement made by Senator Philip that he would not support the bill if it included non-wartime reserve duty. Senator Jones further reassured Senator Philip that the bill did not reference reserve duty and that such duty "is not in the bill." 87th Ill. Gen. Assem., Senate Proceedings, October 23, 1991, at 51 (statements of Senator Jones). Based on these comments, it is clear to us that defendants correctly interpreted section 18—122 to exclude inactive duty from the term "military service" and, consequently, properly denied plaintiff's request to purchase credits toward his pension for the time that he had spent in the Ready Reserves.

■ We next address, as a final matter, plaintiff's motion to strike portions of defendants' brief, a motion which we have taken with the case. Plaintiff argues in his motion that defendants violated Supreme Court Rule 341(g) (177 Ill. 2d R. 341(g)) by reversing their position in their reply brief on appeal regarding the meaning of "military service." Contrary to plaintiff's argument, defendants' reply brief reiterates the arguments made in their opening brief regarding the meaning of the term "military service," and defendants' reference to a dictionary meaning of the term, to which plaintiff objects, was offered to refute plaintiff's contention that the term "military service" clearly and unambiguously supported his position. Portions of a reply brief will not be stricken if the arguments respond to arguments made in the appellee brief. See *Kus v. Sherman Hospital*, 204 Ill. App. 3d 66, 70-71, 561 N.E.2d 381 (1990); *In re Application of Cook County Treasurer & Ex-Officio County Collector*, 135 Ill. App. 3d 901, 908, 482 N.E.2d 361 (1985). Accordingly, we deny plaintiff's motion to strike portions of defendants' reply brief.

For the reasons stated, we reverse the judgment of the circuit court.

Reversed.

CAHILL, P.J., and WOLFSON, J., concur.