2019 IL App (4th) 180628

NO. 4-18-0628

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 12, 2019
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from |
| DANIELLE R. ELLIOTT, | ) | Circuit Court of |
|     Petitioner-Appellant, | ) | Ford County |
|     and | ) | No. 07D69 |
| NEIL PATRICK ELLIOTT, | ) | |
|     Respondent-Appellee. | ) | Honorable |
| | ) | Matthew J. Fitton, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE HOLDER WHITE delivered the judgment of the court, with opinion.
Justice Cavanagh concurred in the judgment and opinion.
Justice Harris concurred in part and dissented in part, with opinion.

**OPINION**

¶ 1       In March 2014, petitioner, Danielle R. Elliott, filed a petition to modify a July 2012 order regarding child support and day care expenses. In May 2014, respondent, Neil Patrick Elliott, filed a petition to modify a June 2013 order regarding day care expenses. In January 2018, the trial court entered an order (1) finding no substantial change in circumstances existed to modify the support order, (2) increasing respondent's child care expense retroactive to July 1, 2017, and (3) declining to calculate respondent's arrearage or enter a finding of contempt until a certified accounting was presented by the State Disbursement Unit. In an order entered on petitioner's motion to reconsider, the court found the evidence and documentation failed to show an arrearage and declined to find respondent in contempt.

¶ 2 Petitioner appeals, arguing (1) the trial court should have found respondent in indirect civil contempt and (2) the court erred in denying petitioner's petition to increase child support. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

¶ 3                                I. BACKGROUND

¶ 4 The parties married on September 25, 1999, and had one daughter, S.E. (born August 8, 2007). In April 2009, the trial court entered a judgment of dissolution of marriage. The court ordered respondent to pay child support, day care expenses, and a bimonthly payment on an arrearage.

¶ 5 In July 2012, the trial court entered an order requiring respondent to pay $413.66 bimonthly for child support and $108.33 bimonthly for day care expenses. The child support and day care expense payments commenced October 1, 2011. In June 2013, the court entered an order determining respondent's arrearage, which noted the parties agreed respondent owed $5298.22 and ordered respondent to make bimonthly arrearage payments of $82.73. The same day, the court entered an order on respondent's motion to modify an order on visitation and stated that other than the modifications made within the order, all previous orders remained in full force and effect.

¶ 6                              A. Motions to Modify

¶ 7 In March 2014, petitioner filed a petition to modify child support alleging a substantial change in circumstances. In June 2015, petitioner filed a memorandum of law asking the trial court to consider respondent's spousal income in determining whether to modify child support.

¶ 8 In May 2014, respondent filed a petition to modify the June 2013 support order. The petition alleged the June 2013 order to withhold income ordered respondent to pay $108.33 bimonthly for day care expenses. The withholding order does not appear in the common law record. Respondent's petition to modify the June 2013 support order alleged S.E. was no longer attending day care and asked the court to remove his day care expense obligation.

¶ 9 B. Rules to Show Cause

¶ 10 In May 2015, the trial court entered an order for rule to show cause finding probable cause to believe that respondent failed to comply with the provisions of the July 2012 order for child support and day care expenses, the June 2013 order on arrearage, and the June 2013 withholding order. In May 2017, petitioner filed a petition for rule to show cause alleging respondent failed to pay $17.49 for his half of prescription costs petitioner incurred. An order on this petition for rule to show cause does not appear in the record. In August 2017, petitioner filed another rule to show cause alleging respondent failed to fully pay child support through August 15, 2017. The petition alleged an arrearage of $24,033.86. Thereafter, the court entered an order for rule to show cause for the balance of unpaid child support in the amount of $24,033.86.

¶ 11 In September 2016, petitioner filed a motion for summary judgment based on a request to admit to which respondent failed to respond or object. The request to admit contained copies of child support payment history records from the State Disbursement Unit. The payment history shows respondent made various child support payments, and the motion for summary judgment alleged the payments totaled $37,575.29. The motion further alleged respondent should have paid $62,104.28 through August 20, 2016.

¶ 12 In May 2017, petitioner filed another motion for summary judgment based on another request to admit to which respondent failed to respond or object. The request to admit

contained a document titled "employer's answer to order/notice to withhold income for child support." The document listed the obligor as respondent, the employer as Feld Entertainment, Inc., and stated respondent's disposable earnings were $3463.12 per week. The request to admit also contained a warranty deed indicating respondent and his second wife purchased a home for $200,000, on which they owed $160,000.

¶ 13                                    C. Hearings

¶ 14         In December 2016, the matter was set for a hearing on all issues. Respondent did not file a brief and failed to appear personally or by counsel. Accordingly, the trial court found respondent in default and entered judgment in petitioner's favor. In January 2017, respondent filed a motion to vacate the default judgment. A March 2017 docket entry shows the court granted respondent's motion to vacate and ordered the parties to submit discovery, including updated financial affidavits, within 30 days. The entry also notes counsel for respondent conceded that respondent owed at least $18,874 in arrearage as of June 1, 2016.

¶ 15         In August 2017, the trial court held a hearing on all pending matters. At the outset, the court addressed petitioner's motion to dismiss respondent's petition to modify day care expenses. Petitioner supplemented the motion with copies of checks to prove day care expenses from 2012 to 2017. Petitioner argued respondent's petition to modify should be dismissed based on her proof of day care expenses and further argued the order for day care expenses was for $108.33, with no conditions or limits. Counsel for respondent argued the original order for day care expenses was for one half of the cost of day care with Pam Bruns. Based on the checks produced by petitioner, respondent argued he did not owe day care expenses because petitioner paid different day care providers. Respondent further argued the original order was for one half of the day care expenses and records showed the order to pay $108.33

bimonthly was approximately double the cost of the actual expenses. Accordingly, respondent asked for "credit" in the form of calculating his arrearage based on half of the actual day care expenses incurred, rather than calculating the arrearage based on the ordered $108.33 for day care expenses. The court indicated its belief that the intent of the day care expense order was for respondent to pay half of actual expenses, not the amount ordered.

¶ 16    Petitioner next raised the May 2017 petition for rule to show cause regarding the $17.49 respondent owed for pharmaceutical expenses. Respondent agreed to pay the $17.49. The parties addressed petitioner's motions for summary judgment at length. The trial court ultimately determined there were genuine issues of material fact and proceeded to hear the following testimony.

¶ 17    1. *Respondent*

¶ 18    Respondent identified numerous income tax returns, including one for his second wife, who respondent subsequently divorced, that showed she earned $81,775 in 2015. Respondent testified he received tax refunds from several states and from the Internal Revenue Service. Respondent worked for Feld Entertainment as a monster truck driver. He earned a fixed amount per event, and his employer guaranteed 16 events per year. Respondent earned $3250 for each event and $3750 for international events. Respondent testified his tax returns showed gross wages as follows: $82,400 in 2013, $79,880 in 2014, $85,375 in 2015, and $83,750 in 2016. Counsel for petitioner asked respondent about records from his employer that "reflected a 2014 income of [$]58,250 and a 2015 gross of $92,000 and in 2016 $71,500, and thus far in 2017 or, at least, through the end of June, [$]54,250." Respondent agreed those records would be correct.

¶ 19    Respondent testified he owned a 2007 Dodge Ram truck on which he owed a little more than $10,000. Respondent also testified about numerous bills he and his ex-wife continued

to share because they still lived together. According to respondent, the court awarded his second wife the house in the divorce and he took a motor home. However, respondent's name was still on the title for the house. In addition to the truck and the motor home, respondent owned a Harley-Davidson motorcycle.

¶ 20 According to respondent, he and his second wife terminated an existing joint account when they divorced in February 2017. Respondent put all his funds into the joint account. Respondent testified he was unaware of numerous large transfers of funds out of the joint account. Some transfers were to a company called Florida Home REA Credit Com where respondent's second wife worked as a realtor. Other transfers were to different accounts. According to respondent, his second wife handled their finances.

¶ 21 2. *Petitioner*

¶ 22 Petitioner acknowledged the evidence already submitted regarding day care expenses and further testified there were occasions she had to call someone different from the actual day care provider. On those occasions, petitioner paid the care provider in cash. Petitioner had to pay for child care even when S.E. was unable to attend. According to petitioner, the cost of living increased since the dissolution of marriage. Petitioner testified she had a $40 co-pay when she took S.E. to the doctor. Petitioner sent respondent copies of the co-pay expenses, but he never paid his half. Petitioner provided these expenses to respondent approximately 10 or 20 times before giving up.

¶ 23 3. *Trial Court's Ruling*

¶ 24 In January 2018, the trial court entered a written order regarding the petitions to modify child support and day care expenses. The court concluded petitioner failed to prove a substantial change in circumstances—namely, an increase in respondent's income—warranted a

modification of child support. The court declined to find that it should consider respondent's new spouse's income. In making its determination, the court relied heavily on the tax returns and financial affidavits filed. The court calculated child support under the new statute that went into effect after July 1, 2017. The court wrote, "In applying the financial data to the Basic Child Support Calculation, the Court has observed the amount of child support paid by Respondent to Petitioner has had a slight variation; however, the amounts vary slightly, to an increase of less than $20 per month in 2014 and 2015 to a drop of less than $15 in 2016." The court rejected an increase in child support based solely on the age of the child. The court did not find a substantial change in circumstances existed to modify the support order of $413.66 semimonthly.

¶ 25    With regard to respondent's petition to modify the child care contribution, the trial court wrote as follows:

> "The Court finds that given all the expenses incurred by the Petitioner that a need still exists and given the discretion the court has in such matters child care expenses will continue to be paid in the amount originally ordered by the court on July 2, 2012. Respondent's payment based on the $108.33 (semi-monthly) would total $2599.92 per year. The Petitioner, pursuant to the Order, is also providing for her 50% of the payments, making the total child care expenses $5199.84 per year. Given the $780 tax credit to Petitioner, the total is $4449.84. Given that Respondent is to pay 70% based on Percentage Share of Net Monthly Income, the Respondent's child care expense would be $129.75 semi-monthly, retroactive to July 1, 2017."

The court reserved the issue of respondent's arrearage and declined to enter a finding of contempt pending presentation of a certified accounting by the State Disbursement Unit.

¶ 26                          D. Petitioner's Motion to Reconsider

¶ 27          Petitioner filed a motion to reconsider along with a certified copy of respondent's child support summary payment history from the State Disbursement Unit. The trial court denied the motion to reconsider. The court noted the payment history provided the date of collection, the nature of the action taken, the posting date, and the amount disbursed. The payment history showed the collection and disbursement of $102,084.72. The court found the payment history did not include a detailed finding regarding an arrearage or amount owed along with the statutory 9% interest. The court concluded, "based on the credibility of the evidence, documentation, filings and arguments, the court finds no contempt, again based on the documentation and the lack of a certified accounting. The Summary History shows documentation of payment history."

¶ 28                          II. ANALYSIS

¶ 29          On appeal, petitioner argues (1) the trial court should have found respondent in indirect civil contempt and (2) the court erred in denying petitioner's petition to increase child support. We turn first to petitioner's claim that the court should have found respondent in indirect civil contempt.

¶ 30                          A. Indirect Civil Contempt

¶ 31          Petitioner first argues the trial court erred by failing to hold respondent in indirect civil contempt. Specifically, petitioner argues the trial court erred in handling three petitions for rule to show cause where petitioner established the amount of support owed and the payment of less than that amount. Generally, orders regarding child support are enforced through contempt proceedings. *In re Marriage of Berto*, 344 Ill. App. 3d 705, 711, 800 N.E.2d 550, 555 (2003). "A

rule to show cause is one means by which to bring an alleged contemnor before the trial court when the failure to comply with a court order is the alleged contemptuous behavior." *Id.* " 'Whether a party is guilty of contempt is a question of fact for the trial court, and a reviewing court should not disturb the trial court's determination unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion.' " *In re Marriage of Benink*, 2018 IL App (2d) 170175, ¶ 43, 113 N.E.3d 576 (quoting *In re Marriage of McCormick*, 2013 IL App (2d) 120100, ¶ 17, 995 N.E.2d 529).

¶ 32        Petitioner argues that she met her burden of establishing respondent failed to pay the full amount of support he owed. We agree. Petitioner established court orders required respondent to pay the following amounts twice per month: $413.66 for child support, $108.33 for day care expenses, and $82.73 for an arrearage that totaled $5298.22 as of June 30, 2013. Petitioner included calculations showing the total support due from July 2013 through August 2017. Petitioner also introduced the certified payment history from the State Disbursement Unit showing respondent made payments from July 2013 through August 2017 totaling an amount less than petitioner's calculated amount due. Petitioner's filings and exhibits established respondent's noncompliance with the court order to pay child support, day care expenses, and an arrearage. Evidence of a party's noncompliance with an order to pay support constitutes *prima facie* evidence of contempt. *In re Marriage of LaTour*, 241 Ill. App. 3d 500, 507, 608 N.E.2d 1339, 1345 (1993). When such a showing is made, the burden shifts to the alleged contemnor, who must show the noncompliance was not willful and contumacious. *Id.* at 508.

¶ 33        The report of proceedings shows that respondent made no attempt to argue his inability to pay the ordered support nor did he argue the failure to pay was not willful. Rather, respondent repeatedly acknowledged there was an arrearage. Respondent asserted the amount of

the arrearage was in question because he requested "credit" based on petitioner's actual expense for day care. Essentially, respondent argued petitioner spent less than the twice monthly $108.33 for day care expenses, so the calculation of the support due should have been lower. As respondent made no attempt to show his failure to comply with the ordered support was not willful, he has not met his burden.

¶ 34        We note the trial court concluded the certified document from the State Disbursement Unit showed respondent's history of paying his child support obligation. However, our review of the record shows this conclusion was against the manifest weight of the evidence. The certified payment history shows respondent made numerous payments of $279.10 from July 2013 through January 2017. It appears this figure was arrived at by taking the twice monthly support obligation of $604.72 ($413.66 for child support plus $108.33 for day care expenses plus $82.73 for the arrearage) multiplying it by 24 annual payments ($14,513.28) and then dividing it into 52 weekly payments ($279.10). Accordingly, respondent should have made 26 payments for July 2013 through December 2013 and 52 payments per year thereafter. The certified payment history shows respondent made 26 payments in 2013, 42 payments in 2014, 41 payments in 2015, and 40 payments in 2016. Respondent made four of these payments in January 2017 before he increased the payments to $646.15 in accordance with a support order entered in conjunction with a December 2016 default judgment. The 2017 payments are further complicated by the fact that the court later vacated the December 2016 default judgment. Nonetheless, the certified payment history clearly shows respondent failed to comply with the court-ordered support in 2014, 2015, and 2016. Accordingly, the trial court's conclusion that the payment history showed respondent's compliance with the court orders was against the manifest

weight of the evidence. Thus, we reverse the judgment of the trial court and remand for further proceedings.

¶ 35   We note petitioner made the only attempt to calculate the support due for the relevant time period. Respondent repeatedly acknowledged the existence of an arrearage but made no attempt to calculate (1) what was owed, (2) what respondent actually paid, or (3) the difference between the two. However, the trial court is not required to accept petitioner's calculations. On remand, we encourage the trial court to calculate the total support owed for the relevant time period. We recognize the numerous complicating factors presented in this case, including the arrearage already in existence in July 2013 (and whether that arrearage and interest was ever satisfied by respondent's payments) and the subsequently vacated default judgment increasing respondent's support obligation. These are matters best suited to the trial court, which as the finder of fact is in a better position to make these determinations than the appellate court.

¶ 36               B. Denial of Petition to Increase Child Support

¶ 37   Petitioner next argues the trial court erred in denying the petition to increase child support due to no material change in circumstances. Specifically, petitioner argues the trial court erroneously (1) applied the provisions of the "new" Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/101 *et seq.* (West 2016)); (2) declined to consider respondent's income tax refund as income; (3) declined to consider respondent's second wife's income, particularly because their subsequent divorce was a "sham," and (4) concluded there had not been a substantial change in circumstances.

¶ 38   The Act "and the case law make clear that the paramount consideration of the court is to determine whether a substantial and material change has intervened since the original support allowance was made." *In re Marriage of Daniels*, 115 Ill. App. 3d 173, 176, 450 N.E.2d

361, 362 (1983). Generally, a court of review will not disturb a trial court's decision to deny modification of child support payments unless it involves a clear abuse of discretion. *Id.* However, the legal question of the applicable version of the Act involves a matter of statutory construction, which is reviewed *de novo*. *Benink*, 2018 IL App (2d) 170175, ¶ 26.

¶ 39 In her brief, petitioner argues "the trial court herein considered 505.2 (2)A. No public assistance was involved in this case." Our review of section 505.2 reveals no subsection (2)A. 750 ILCS 5/505.2 (West 2016). Moreover, section 505.2 addresses health insurance, which was not an issue before the trial court.

¶ 40 Petitioner's brief devotes a great deal of discussion to the 20% threshold in section 510(a)(2)(A), which provides, in part, as follows:

"(a) *** An order for child support may be modified as follows:

(1) upon a showing of a substantial change in circumstances; and

(2) without the necessity of showing a substantial change in circumstances, as follows:

(A) upon a showing of an inconsistency of at least 20% *** between the amount of the existing order and the amount of child support that results from application of the guidelines specified in Section 505 of this Act ***.

***

The provisions of subparagraph (a)(2)(A) shall apply only in cases in which a party is receiving child support enforcement services from the Department of Healthcare and Family Services under Article X of the Illinois Public Aid Code ***." *Id.* § 510(a).

¶ 41    However, during oral argument in this case, it became clear petitioner's argument was not about the 20% threshold set forth in section 510(a)(2)(A). Rather, petitioner argued the trial court erred by using the child support guidelines from the "new" Act to calculate respondent's support obligation. Based on the income-sharing child support calculations under the "new" Act, the court determined that respondent's child support obligation would not change very much, and therefore, the court found no substantial change in circumstances. However, petitioner argues that had the court calculated respondent's child support obligation under the provisions of the old Act, the court would have found a substantial change in circumstances. Respondent conceded at oral argument that under the old provisions of the Act (*i.e.*, guideline support of 20% of respondent's income), respondent's child support obligation would have increased. The question, therefore, becomes whether the trial court erred by applying the new income-sharing method of calculating child support in determining there was no substantial change in circumstances.

¶ 42    The "new" Act was a comprehensive reworking of the Act, and it contains a provision adopting and amending section 801, which involves the applicability of the Act. *Benink*, 2018 IL App (2d) 170175, ¶ 27. Section 801 governs the question of whether the trial court should have applied the old child support guidelines or the new income-sharing method of calculating child support, so we must construe that statute. *Id.* ¶ 26. In so doing, we must " 'ascertain and give effect to the legislature's intent.' " *Id.* (quoting *Lieb v. Judges' Retirement*

*System*, 314 Ill. App. 3d 87, 92, 731 N.E.2d 809, 813 (2000)). The plain language of the statute is the best indication of the legislature's intent, and we give effect to clear statutory language without the use of other statutory construction aids. *Id.* As noted above, we review *de novo* a ruling on a matter of statutory construction. *Id.*

¶ 43 Section 801 provides, in part, as follows:

"(a) This Act applies to all proceedings commenced on or after its effective date.

(b) This Act applies to all pending actions and proceedings commenced prior to its effective date with respect to issues on which a judgment has not been entered. Evidence adduced after the effective date of this Act shall be in compliance with this Act.

(c) This Act applies to all proceedings commenced after its effective date for the modification of a judgment or order entered prior to the effective date of this Act." 750 ILCS 5/801(a)-(c) (West 2016).

Under this provision, the new Act applies to proceedings commenced on or after January 1, 2016. *Id.* § 801(a). The new Act applies to actions and proceedings filed before January 1, 2016, but only "with respect to issues on which a judgment has not been entered." *Id.* § 801(b). The new Act also applies to modification proceedings filed after January 1, 2016. *Id.* § 801(c).

¶ 44 In *Benink*, the parties divorced in 2010, and the judgment of dissolution set forth the respondent's child support obligation. *Benink*, 2018 IL App (2d) 170175, ¶¶ 3-4. In 2013, the parties both filed petitions seeking modification of the child support obligation. *Id.* ¶¶ 8-9. In August 2016, the trial court issued a memorandum decision in which it "characterized the

- 14 -

petitions as pending proceedings raising issues on which a judgment had not been entered, and it declared that it would therefore apply the new Act." *Id.* ¶ 12.

¶ 45        On appeal, the Second District Appellate Court considered the issue of whether the provisions of the old Act or the new Act applied under section 801. *Id.* ¶¶ 26-29. The court held the provisions of the new Act did not apply. *Id.* ¶ 29. In coming to this conclusion, the court wrote as follows:

"The trial court believed that the parties' petitions seeking modification of Eric's child support obligation, which were pending on the effective date of the new Act, fell within subsection (b). However, this reading is contrary to the plain language of the statute. Eric's child support obligation was not, in the words of subsection (b), an 'issue[ ] on which judgment ha[d] not been entered.' The 2010 judgment of dissolution incorporated the parties' property settlement agreement, which contained provisions establishing Eric's child support obligation. Thus, a judgment *had* been entered on the issue of child support.

Rather, the parties' petitions sought the modification of a prior judgment (the judgment of dissolution). As such, they plainly fell within subsection (c) of the statute, which governs 'proceedings *** for the modification of a judgment *** entered prior to the effective date of this Act.' [Citation.] However, under subsection (c), the new Act applies only to modification proceedings commenced after January 1, 2016, the effective date

of the new Act. Here, the parties filed their petitions in 2013, long before the new Act took effect. Accordingly, the new Act did not apply to the proceedings on those petitions." (Emphasis in original.) *Id.* ¶¶ 28-29.

The respondent filed a petition for rehearing, which cited cases holding section 801(b) of the 1977 version of the Act applied to modification proceedings commenced before the Act's effective date. *Id.* ¶¶ 61-62. The *Benink* court noted these cases did not consider section 801(c) but simply cited section 801(b)'s language that the newest version of the Act applied to pending proceedings on unresolved issues. *Id.* ¶ 63. "Both opinions seemed to view this language as meaning that essentially *all* matters pending on the Act's effective date must be decided under the Act. But this interpretation ignores the plain language of section 801(c), which, unlike section 801(b), specifically addresses modification proceedings." (Emphasis in original.) *Id.*

¶ 46 The *Benink* court further rejected the earlier cases the respondent cited because their interpretation of section 801 essentially read section 801(c) out of the Act. *Id.* ¶ 64. "If modification petitions fall under section 801(b) as long as they are pending and unresolved, there would never be any circumstances in which section 801(c) applies." *Id.* Such an interpretation was contrary to the plain language of section 801(c) and rendered section 801(c) meaningless or superfluous. *Id.*

¶ 47 Finally, the *Benink* court rejected the respondent's reliance on *Simmons v. Simmons*, 77 Ill. App. 3d 740, 396 N.E.2d 631 (1979). In *Simmons*, the petitioner argued section 801(c) applied because she filed her petition for modification before the effective date of the 1977 version of the Act. *Id.* at 742. The *Simmons* court found it incorrect to look solely to subsection (c) without considering subsections (a) and (b). *Id.* The *Simmons* court then cited the

language of subsection (b) and concluded "Subsection (b) has consistently been applied to cases such as the instant case where a petition for modification was pending on the Act's effective date. [Citations.] Thus we hold that the new act governs the disposition of this case." *Id.* The *Benink* court concluded the *Simmons* court improperly ignored the statute's plain language in favor of following earlier cases to conclude that section 801(b) governed. *Benink*, 2018 IL App (2d) 170175, ¶ 65. Such an interpretation departed from the plain language of the statute and read in a limitation that conflicted with the express legislative intent. *Id.* Accordingly, the *Benink* court rejected the approach in *Simmons* as unsound. *Id.*

¶ 48        As noted above, the *Benink* court concluded the parties' 2013 petitions for modification did not fall within subsection (b) because:

> "Eric's child support obligation was not, in the words of subsection (b), an 'issue[ ] on which judgment ha[d] not been entered.' The 2010 judgment of dissolution incorporated the parties' property settlement agreement, which contained provisions establishing Eric's child support obligation. Thus, a judgment *had* been entered on the issue of child support." (Emphasis in original.) *Id.* ¶ 28.

¶ 49        In our view, the *Benink* court failed to recognize the meaning of the term "issue." An "issue" is not merely a "topic," such as the general topic of child support. Rather, an "issue" is defined as, "[a] point in dispute between two or more parties." Black's Law Dictionary 849 (8th ed. 2004). An "issue" is a proposition advanced by one party on which another party disagrees. That the respondent was obligated to pay child support was not an issue or a point in dispute between the parties—the petitions for modification presupposed the child support

- 17 -

obligation. By contrast, whether the circumstances merited a reduction in respondent's child support obligation was an issue, as was petitioner's claim seeking an increase in respondent's child support. The modification proceedings commenced prior to the effective date of the new Act, and those were two "issues on which a judgment ha[d] not been entered." 750 ILCS 5/801(b) (West 2016). Therefore, contrary to the conclusion in *Benink*, section 801(b) made the new Act applicable to the modification proceedings.

¶ 50    In further support of this position, respondent cites numerous cases applying subsection 801(b) in pending matters, including petitions for modification of child support and custody. See, *e.g.*, *In re Marriage of Sweet*, 104 Ill. App. 3d 738, 743, 432 N.E.2d 1098, 1102-03 (1982) ("Section 801(b) of the Act [citation] states clearly that the Act was applicable to actions pending prior to the effective date of the Act but in which judgment was not entered until after that effective date. Here, Robert's petition for change of custody was filed in August 1977, but judgment was not entered until December 15, more than two months after the Act had taken effect. Under these circumstances, the provisions of [the new Act] applied ***."). Indeed, our research turned up numerous cases decided shortly after the 1977 version of the Act that applied section 801(b) instead of section 801(c) to petitions for modification of child support or custody, including *In re Custody of Sexton*, 84 Ill. 2d 312, 418 N.E.2d 729 (1981). In *Sexton*, the Illinois Supreme Court wrote the following:

> "Section 801(b) of the Act [citation] provides for the Act's
>
> application 'to all pending actions and proceedings commenced
>
> prior to its effective date with respect to issues on which a
>
> judgment has not been entered.' Subsection (c) of this same section
>
> [citation] specifically indicates that the new act is applicable 'to all

proceedings commenced after its effective date for the modification of a judgment or order entered prior to the effective date of the Act.' The effective date of the Act, October 1, 1977, fell between the filing of the original and the amended petition in this case. Here, no judgment was rendered on the plaintiff's original motion for custody modification before October 1, 1977. Therefore, we must apply the new act." *Id.* at 318.

Tempting though it may be to distinguish *Sexton* based on the fact that an amended petition to modify was filed after the effective date of the Act, we decline to do so.

¶ 51 The 1977 version of the Act paralleled provisions in the Uniform Marriage and Divorce Act. *Id.* For purposes of resolving this appeal, the Uniform Marriage and Divorce Act (Uniform Act) is essentially identical to the provisions in section 801 of both the 1977 version of the Act and the new Act. Compare 750 ILCS 5/801(a)-(c) (West 2016), with Unif. Marriage & Divorce Act § 502 (Unif. Law Comm'n 1973). The comment to section 502(b) of the Uniform Act indicated the Uniform Act would "apply to all pending actions and proceedings; but if a judgment has already been entered as to a specific issue, that judgment will not be superseded thereby." Unif. Marriage & Divorce Act § 502 cmt. (Unif. Law Comm'n 1973). As an example, the comment contemplates an interlocutory judgment of divorce entered prior to the effective date of the Uniform Act. The Uniform Act would not affect such judgments, and the Uniform Act would govern the pending issues on which a judgment had not been entered. The comment to section 502(c) of the Uniform Act reads as follows:

"Subsection (c) makes the Act applicable to proceedings commenced after its effective date for the modification of orders or

judgments entered prior to its effective date only if the previously entered judgment or order would have been modifiable under prior law. Thus, if a prior order for child custody, support, visitation, or maintenance would have been modifiable under the state's prior law, then those orders may be modified under this Act in accordance with the standards established by this Act. But if a prior judgment dividing marital property or awarding lump sum alimony would not have been modifiable under prior law, those judgments are not subject to reopening for change under this Act, even though the standards for property division are different under this Act. In any event, judgments awarding marital property are not modifiable under this Act (see Section 316(a)). On the other hand, an order that would have been modifiable under prior law may cease to be modifiable under this Act. For example, in states where maintenance is retroactively modifiable as to unpaid installments, installments accuring [*sic*] after the effective date of this Act will not be retroactively modifiable under Section 316(a)." *Id.*

This comment, as well as the case law cited by respondent, indicates that section 801(c) of the Act does not govern where a petition to modify child support was pending and no judgment on that petition had been entered. Rather, section 801(c) governed the applicability of the Act to orders that would or would not have been modifiable under prior law. See, *e.g.*, *Josic v. Josic*, 78 Ill. App. 3d 347, 349, 397 N.E.2d 204, 206 (1979) ("When the parties negotiated their agreement in 1973, existing law provided that parties, by their settlement agreements, could not divest the

court of its power to modify periodic alimony provisions. [Citation.] Under section 502(f) of the new Act, however, parties may preclude such modification by the court if they express this intention in their separation agreement."). Based on the foregoing, we conclude section 801(c) addressed situations where other provisions of the Act affected the very nature of the order—*i.e.* whether the order was modifiable at all. Following the enactment of the Act in 1977, Illinois courts, including the Illinois Supreme Court, understood section 801(b) to govern pending petitions to modify child support and custody, presumably because those orders were modifiable under prior law and the provisions of the new Act did not affect the basic nature of the orders as modifiable or not modifiable.

¶ 52        In accordance with the foregoing discussion, we decline to follow the reasoning in *Benink*. Therefore, we conclude the trial court did not err in applying the child support guidelines in the new Act when it determined no substantial change in circumstances warranted a modification of the child support in this case. We affirm the judgment of the trial court.

¶ 53        Petitioner next claims that the trial court erroneously declined to consider respondent's income tax refunds as income and his second wife's income in determining whether there had been a substantial change in circumstances. We disagree. The trial court carefully considered all relevant factors in making its determination. Those factors include "the financial resources and needs of the custodial parent, the standard of living the child would have enjoyed had the parents been married, the physical, emotional[,] and educational needs of the child, and the financial resources and needs of the noncustodial parent." *In re Marriage of Baptist*, 232 Ill. App. 3d 906, 917, 598 N.E.2d 278, 285 (1992). The court indicated it declined to impute respondent's second wife's income as respondent's own income, but there is no indication the court failed to consider her income as part of respondent's financial resources. Although

petitioner cites authority for the proposition that a court *may* consider a spouse's income, she does not address the necessary factual findings to impute income to respondent. See *In re Parentage of M.M.*, 2015 IL App (2d) 140772, ¶ 44, 29 N.E.3d 1197. Accordingly, we conclude the trial court did not abuse its discretion in declining to impute income to respondent. We further conclude the court did not abuse its discretion in declining to consider respondent's income-tax refunds as income. There is no indication the child support payment was improperly calculated, and a tax refund is part of a party's net income, not an addition to it. *In re Marriage of Eastburg*, 2016 IL App (3d) 150710, ¶ 17, 65 N.E.3d 498.

¶ 54     The trial court carefully considered all the evidence and testimony. The court entered a detailed written order concluding petitioner failed to show a substantial change in circumstances, particularly in light of the fact that respondent's income had not substantially changed since the most recent modification of child support. Accordingly, we find the trial court did not abuse its discretion in denying the modification in child support. For the foregoing reasons, we affirm the judgment of the trial court.

¶ 55                              III. CONCLUSION

¶ 56     For the reasons stated, we affirm in part, reverse in part, and remand for further proceedings.

¶ 57     Affirmed in part, reversed in part, and remanded.

¶ 58     JUSTICE HARRIS, concurring in part and dissenting in part:

¶ 59     I agree with the majority except for its determination that the child support guidelines in the new Act apply in this case. In my view, the plain language of section 801 suggests the earlier version of the Act applies under these facts.

¶ 60      As pointed out by the majority, the Second District in *Benink* determined on very similar facts that the old version of the Act should apply. *Benink*, 2018 IL App (2d) 170175, ¶ 29. Because the majority has fairly set forth the background and reasoning in *Benink*, I will simply say that I agree with the analysis and decision in that case. See *supra* ¶¶ 46-48. Contrary to the majority here, the court in *Benink* held that "the applicability of the new Act to modification proceedings is governed by section 801*(c)* not 801(b)." (Emphasis in original.) *Benink*, 2018 IL App (2d) 170175, ¶ 62. I agree with *Benink*'s holding and think it more accurately reflects the legislature's intent.

¶ 61      Accordingly, I respectfully concur in part and dissent in part.

| Cite as: | *In re Marriage of Elliott*, 2019 IL App (4th) 180628 |
| --- | --- |
| **Decision Under Review:** | Appeal from the Circuit Court of Ford County, No. 07-D-69; the Hon. Matthew J. Fitton, Judge, presiding. |
| **Attorneys for Appellant:** | Paul R. Wilson Jr., of Paul R. Wilson Jr., Ltd., of Rantoul, for appellant. |
| **Attorneys for Appellee:** | Matthew E. Peek, of Erwin, Martinkus & Cole, Ltd., of Champaign, for appellee. |